JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KYLE SMITH, individually and On Behalf Of All Others Similarly Situated,

**DEFENDANTS**

TEMPLE UNIVERSITY

**(b)** County of Residence of First Listed Plaintiff   Monmouth County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   County of Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Jason T. Brown (PA BAR # 79369)
JTB Law Group, LLC 155 2nd Street, Suite 4, Jersey City, NJ 07302

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❑ 1   U.S. Government
Plaintiff

❑ 3   Federal Question
*(U.S. Government Not a Party)*

❑ 2   U.S. Government
Defendant

☒ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                         *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated *or* Principal Place of Business In This State | ❑ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ❑ 2 | Incorporated *and* Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 625 Drug Related Seizure of Property 21 USC 881 | ❑ 422 Appeal 28 USC 158 | ❑ 375 False Claims Act |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 365 Personal Injury - | ❑ 690 Other | ❑ 423 Withdrawal | ❑ 376 Qui Tam (31 USC |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ❑ 140 Negotiable Instrument | Liability | ❑ 367 Health Care/ | | | ❑ 400 State Reapportionment |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❑ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ❑ 820 Copyrights | ❑ 430 Banks and Banking |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Product Liability | | ❑ 830 Patent | ❑ 450 Commerce |
| ❑ 152 Recovery of Defaulted | Liability | ❑ 368 Asbestos Personal | | ❑ 835 Patent - Abbreviated | ❑ 460 Deportation |
| Student Loans | ❑ 340 Marine | Injury Product | | New Drug Application | ❑ 470 Racketeer Influenced and |
| (Excludes Veterans) | ❑ 345 Marine Product | Liability | | ❑ 840 Trademark | Corrupt Organizations |
| ❑ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❑ 480 Consumer Credit |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ☒ 370 Other Fraud | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | ❑ 490 Cable/Sat TV |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | ❑ 371 Truth in Lending | Act | ❑ 862 Black Lung (923) | ❑ 850 Securities/Commodities/ |
| ❑ 190 Other Contract | Product Liability | ❑ 380 Other Personal | ❑ 720 Labor/Management | ❑ 863 DIWC/DIWW (405(g)) | Exchange |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Property Damage | Relations | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | Injury | ❑ 385 Property Damage | ❑ 740 Railway Labor Act | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| | ❑ 362 Personal Injury - | Product Liability | ❑ 751 Family and Medical | | ❑ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ❑ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ❑ 210 Land Condemnation | ❑ 440 Other Civil Rights | **Habeas Corpus:** | ❑ 791 Employee Retirement | ❑ 870 Taxes (U.S. Plaintiff | ❑ 896 Arbitration |
| ❑ 220 Foreclosure | ❑ 441 Voting | ❑ 463 Alien Detainee | Income Security Act | or Defendant) | ❑ 899 Administrative Procedure |
| ❑ 230 Rent Lease & Ejectment | ❑ 442 Employment | ❑ 510 Motions to Vacate | | ❑ 871 IRS—Third Party | Act/Review or Appeal of |
| ❑ 240 Torts to Land | ❑ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ❑ 245 Tort Product Liability | Accommodations | ❑ 530 General | | | ❑ 950 Constitutionality of |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ❑ 462 Naturalization Application | | |
| | ❑ 446 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | ❑ 465 Other Immigration | | |
| | Other | ❑ 550 Civil Rights | Actions | | |
| | ❑ 448 Education | ❑ 555 Prison Condition | | | |
| | | ❑ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

❑ 2 Removed from
State Court

❑ 3 Remanded from
Appellate Court

❑ 4 Reinstated or
Reopened

❑ 5 Transferred from
Another District
*(specify)*

❑ 6 Multidistrict
Litigation -
Transfer

❑ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Class Action Fairness Act, 18 U.S.C. §1332(d)  ("CAFA")

Brief description of cause:
Deceptive and unconscionable consumer practices

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
5,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❑ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
2/09/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT                    APPLYING IFP                  JUDGE              MAG. JUDGE

JS 44 Reverse  (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

**KYLE SMITH**, Individually and On Behalf
Of All Others Similarly Situated,

Civil Case No.

Plaintiff,

-against-

**TEMPLE UNIVERSITY**,

Defendant.

_____

## CLASS ACTION COMPLAINT

Plaintiff, **KYLE SMITH**, ("Plaintiff") individually, and on behalf of all others similarly situated, upon personal knowledge and upon information and belief as to all other matters, as and for his Complaint against Defendant, **TEMPLE UNIVERSITY**, ("TEMPLE") alleges as follows:

## NATURE OF CLAIMS

1.     Plaintiff brings this action individually, and on behalf of all similarly situated persons, who enrolled as students in TEMPLE'S Fox School of Business and Management's Online MBA program, between 2015 and the present.

2.     Plaintiff alleges violations of the Unfair Trade Practices and Consumer Protection Law ("CPL") Act of December 16, 1968, P.L. 1224, as amended, 73 P.S. §§201.1—201-9.3 and seeks injunctive relief, compensatory, consequential, punitive damages, costs and reasonable attorney's fees for TEMPLE'S' deceptive and unfair business practices, as herein alleged.

## JURISDICTION AND VENUE

3.      The provisions of the Class Action Fairness Act ("CAFA"), 18 U.S.C. § 1332(d) explicitly provides for the original jurisdiction of the Federal Courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000 exclusive of interests and costs.

4.      Plaintiff alleges that the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interests and costs, as required by 28 U.S.C. §§ 1332(d)(2)(5).

5.      Plaintiff is a Citizens of New Jersey. TEMPLE is a Citizen of the Commonwealth of Pennsylvania. Members of the Class reside in 40 states of the Union other than Pennsylvania and their citizenship is diverse from that of TEMPLE.

6.      Diversity of citizenship exists under CAFA, as required by 28 U.S.C. §§ 1332(d) (5) (B).

7.      The total approximate number of members of the proposed Plaintiff Class is 350 persons.

8.      The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

9.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. §§ 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this district and Defendant is subject to personal jurisdiction in this District.

## THE PARTIES

10.     Plaintiff, KYLE SMITH, is a citizen and resident of Eatontown, New Jersey 07724.

11.     TEMPLE is an incorporated comprehensive research university, created under the laws of the Commonwealth of Pennsylvania, and maintains its headquarters and largest campus in Philadelphia, Pennsylvania.

## STATEMENT OF MATERIAL FACTS

12.     TEMPLE is a public research university in Philadelphia and a national leader in education, research and healthcare, with approximately 40,000 undergraduate, graduate and professional students.

13.     The Fox School of Business and Management is a school within TEMPLE, offering several Master of Business Administration programs, including an MBA delivered 100% online.

14.     The Fox Online MBA program commenced in 2009. It is an AACSB accredited program. At present, there are approximately 550 students enrolled in the program, with an average age of 36 and 12 years of work experience.

15.     Approximately 190 students have graduated from the program since its inception. There is an application acceptance rate of 77%.

16.     Plaintiff graduated from Rowan University in 2007 and earned a B.A. in Chemical Engineering.

17.     Plaintiff has received certification as a project management professional (PMP) and is presently employed on a full-time basis, as a Senior Project Engineer at BASF.

18.     Plaintiff enrolled in the Fox Online MBA program in the Spring 2017 semester.

19.     To date, Plaintiff has completed 30 credits of study and incurred tuition costs of $ 47,934.00. Plaintiff has achieved a Grade Point Average (GPA) of 3.97 [out of 4.0].

**Online MBA Programs**

20.    People looking for growth in their current careers or to launch a new one, are investing time and money to earn an accredited MBA to advance in the job marketplace.

21.    Online MBA programs offer the ultimate flexibility for motivated professionals. Students can generally complete coursework on their own schedule and still maintain a full-time job and other commitments.

22.    There are an estimated 11,000 students enrolled in AACSB accredited online MBA schools in the United States.

23.    An analysis of data submitted to U.S. News by schools in an annual survey offers a glimpse at the average student in a ranked online MBA program who enrolled between July 2015 and June 2016. According to these data, the average age of online MBA students who started a program during that period was 33 years old – older than the average of 27 for those who began an on-campus, full-time MBA program in fall 2016.

24.    Among the 124 ranked online programs that provided employment data to U.S. News, an average of 91 percent were also working full time when they enrolled.

25.    Online MBA programs vary widely in cost depending on the school. Universities generally charge per credit hour, so total cost will depend on how many classes a student takes to complete all degree requirements.

26.    The least expensive online MBA programs can charge less than $300 per credit hour for in-state tuition, resulting in total program costs under $10,000 before financial aid is applied. Top-tier, brand-name business schools can charge more than $1,500 per credit hour, which can, in some cases, results in total costs of more than $100,000 for online MBA degrees.

**Online MBA Ranking**

27.     There are many big names in the educational rankings industry, including Bloomberg BusinessWeek, U.S. News & World Report, Financial Times, Forbes, Princeton Review, and The Economist.

28.     Online MBA programs only have a few prestigious rankings, and among the most respected of them is the U.S. News & World Report Best Online MBA Programs Ranking.

29.     The U.S. News Online MBA rankings are taken specifically for distance MBA programs, and are based upon vetting the following categories, with the following weights: Student engagement (28%), Admissions selectivity (25%), Peer reputation (25%), Faculty credentials and training (11%), and Student services and technology (11%).

30.     U.S News describes their methodology transparency as follows:

"US. News offers prospective students an analytically rigorous ranking based on data specific to the distance program by a specific school, and not solely based upon its traditional business school's overall reputation. Meaning that this ranking is not just a subset of a larger on-campus MBA or business ranking. Students do not have to assess the data and see how it might apply to the online program. This data is different and gives students a unique perspective into the exact program in which they might enroll."

31.     US News Online MBA Ranking do not include data available from students and alumni. The data only shows the intended quality of the program, based upon infrastructure, and the perspective of the program from the view of peer academic officials.

32.     U.S. News started ranking online MBA programs in 2012. In 2014, US News ranked Temple No. 9.

33.     From 2015 to 2018, U.S. News released their online MBA rankings from a list of 225 different online MBA programs. For those four (4) consecutive years, the U.S. News ranked TEMPLE University as No.1.

34.     TEMPLE'S No.1 Online MBA ranking provided significant leverage to enable the school to increase enrollment in its online MBA offering. In fact, in 2017 alone, TEMPLE was able to increase its online MBA enrollment by an impressive 57% to 546 students from 351, one of the largest percentage increases of any online MBA offering that year. Only two other highly ranked programs did better: The University of Maryland's Smith School of Business boosted enrollment by 151% to 369 students from only 147 a year ago. The University of North Carolina's Kenan-Flagler Business School reported a 78% jump in enrollment to 1,862 students from 1,047 a year earlier.

35.     TEMPLE'S four (4) consecutive No.1 rankings also had an organic geometric positive impact on another aspect of U.S. News ranking. The peer assessment portion of the rankings accounts for 25% of the overall weight. Peer assessment is achieved by the administration of independent surveys conducted of high-ranking academic officials at MBA programs, which helps account for intangible factors affecting program quality that statistics do not capture. Also, employers may hold in high regard MBAs earned from programs that academics respect. TEMPLE'S persistent dominance as No.1, served to help it to gain new prestige, each succeeding year.

**The Ranking Scandal**

36.     On January 24, 2018, U.S. News removed TEMPLE's Fox School of Business No. 1 ranked online MBA program off its newest ranking [2018] after finding out that TEMPLE had misreported critical data on its program.

6

37.     Shortly after the release of the 2018 Best Online MBA Programs rankings, TEMPLE notified U.S. News that it had misreported data that were used to calculate the Best Online MBA Programs.

38.     TEMPLE significantly overstated the number of new entrants for its 2016-2017 entering class who submitted GMAT scores. Temple had reported that all 255 [100%] of the program's latest incoming class submitted GMAT scores to get into the program, with an average GMAT score of 619. That score put TEMPLE among the five online MBA programs with the highest test scores in U.S. News' Top 50. In truth and fact, the school acknowledged that only 50 students, or 19.6%, submitted GMAT scores, indicating that the reported average may have been significantly inflated. Standardized test scores are a common and usually required part of admissions in graduate business education.

39.     U.S. News' methodology penalizes online MBA programs in its rankings if less than 75% of new entrants submit either a GMAT or GRE score. U.S. News says that is because the lack of data for 25% of students or more "likely means the standardized test score is not representative of the entire class." Standardized test scores, of course, are also a sign of the quality of a school's class. Not requiring the test for admission signals that the overall quality of an incoming class could be suspect. These scores have a weight of 10% in U.S. News' rankings formula.

40.     In penalizing TEMPLE, U.S. News did not address the school's previously reported data that allowed TEMPLE's Online MBA program to attain its No.1 ranking for what would have been four (4) consecutive years.

41.     In 2013, TEMPLE reported that 12 of 48 (25%) of the entrants into its Online MBA program submitted a GMAT, with an average score of 619. None of the applicants, according to TEMPLE, provided a GRE score.

42.     One year later, in 2014, TEMPLE reported dramatically different numbers. TEMPLE reported that 100% of its new students [70], submitted a GMAT score with an average score of 638. TEMPLE reported a 100% rate of GMAT compliance for four (4) years in a row, [2014-2017] during which time it achieved a No. 1 Online MBA ranking by U.S. News.

43.     Rival school administrators have long been suspicious of TEMPLE'S claims that 100% of its students have taken the GMAT for four (4) consecutive years. This is especially true because TEMPLE'S Website indicates that the school will waive such requirement if the candidate (a) possesses "managerial level experience;" or (b) has an undergraduate degree from an AACSB accredited college or (c) has at least 7 years of work experience and a 3.0 undergraduate point average; or (d) possesses a JD, MD or PhD.

44.     The misreported data resulted in TEMPLE'S numerical rank being higher than it otherwise would have been in the overall Best Online MBA Programs rankings and the Best Online MBA Programs for Veterans rankings.

45.     Because of the discrepancies, U.S. News has moved TEMPLE to the "Unranked" category in the Best Online MBA Programs rankings and removed the school from the Best Online MBA Programs for Veterans rankings. Schools in the unranked category do not receive numerical ranks from U.S. News.

46.     TEMPLE'S unranked status will last until the 2019 publication of the Best Online MBA Programs rankings, conditional upon TEMPLE confirming the accuracy of its next data submission in accordance with U.S. News' requirements.

47.     For 2018, U.S. News has not modified the ranks of any other programs on usnews.com in the Best Online MBA Programs and Best Online MBA Programs for Veterans rankings.

**Effect of the Scandal on Students Enrolled in TEMPLE'S Online MBA Program**

48.     The classic MBA experience is still the gold standard for many applicants because the full-immersion experience is invaluable for the networking opportunities and alumni connections. Students pursuing their degrees online inevitably give up many benefits offered by full-time programs.

49.     Not all hiring managers are familiar with online learning. And, at some larger companies, earning an online degree can make the hiring process more difficult.

50.     Despite the research supporting online education, some recruiters and hiring managers still see an online MBA as a second-class credential. In its 2009 Corporate Recruiters Survey, the Graduate Management Admission Council (GMAC), the nonprofit organization that administers the GMAT, reported that only 9 percent of companies surveyed actively recruit candidates from online MBA programs, as opposed to the 77 percent that pursue full-time MBA grads. Gail Dundas, a spokesperson for Intel Corp., captures the prejudice in an e-mail: "We target hiring from top-tier MBA universities, and online degrees do not tend to be in the top tier."

51.     Recruiters say most employers accept job candidates' online MBAs from well-respected schools, especially now that the quality of an online MBA education at many institutions is equivalent to one on a physical campus. But in some cases, experts say, there's still the need to educate companies about the legitimacy of many online programs. Employers are often more critical of online, for-profit schools than of online programs offered by nonprofit schools.

52.     But recruiters, who are more apt to weigh the reputation of the school than the way the MBA is delivered, aren't necessarily prioritizing skills that MBA students develop online, says Brad Remillard, cofounder and executive recruiter at IMPACT Hiring Solutions Executive Search in Orange County, Fla.

53.     "For me as a recruiter and for my clients, it really depends more on the school than the online [delivery]," says Remillard, who writes a weekly job advice column for the Orange County Register and is the author of two books on hiring.

54.     But despite their lack of enthusiasm for online MBA programs, hiring managers understand that online courses from top programs, such as Harvard Business School, are credible, according to Remillard. "If Harvard puts this on, it's probably a high-quality program," he says.

55.     Stephen Joel Trachtenberg, former president of George Washington University and a consultant at the executive recruiting firm Korn/Ferry International, agrees that schools' reputations matter. Still, an online MBA degree is better than no MBA, Trachtenberg says, particularly in government and military roles, where hiring managers care more about applicants having a master's degree than they do about the subject of the degree or where it is obtained.

56.     The scandal has raised grave concerns about the integrity of TEMPLE'S Administration and will have a long reaching negative impact on school's reputation, prestige and peer ratings.

57.     TEMPLE has engaged Jones Day, a global law firm, to conduct a comprehensive review of "the Fox School's ranking data and processes."

58.     Jones Day had been hired by Tulane University after U.S. News kicked out its Freeman School of Business for a similar reporting error in 2013. Tulane admitted that it inflated average GMAT scores reported to U.S. News by an average of 35 points for consecutive five years from 2007 through 2011. Freeman also conceded that it had falsely increased the number of completed applications it received by an average of 116 applications over the same time period.

59.     TEMPLE has also voluntarily asked U.S. News to withdraw the school from its forthcoming rankings on full- and part-time traditional MBA programs.

60.     U.S. News has already modified its Website to eliminate any references to TEMPLE'S

No. 1 rankings for Online MBA programs from 2015-2018.

## CLASS ACTION ALLEGATIONS

61.     This action is brought and may be properly maintained as a Class action pursuant to The

Class Action Fairness Act, 28 U.S.C. § 1332.

62.     This action has been brought and may properly be maintained as a class action against

TEMPLE pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure, because

there is a well-defined community of interest in the litigation and the proposed Class is easily

ascertainable.

63.     Plaintiff brings this action individually and on behalf of all others similarly situated, and

seeks certification of a Class, defined as:

*All persons who enrolled as students in TEMPLE'S Fox School of*

*Business and Management's Online MBA program, between 2015 and*

*the present.*

64.     The following are excluded from the Class: TEMPLE, by its affiliates, employees,

officers and directors; heirs, successors and their assigns of any such person or entity, together

with any immediate family member of any officers, directors, employee of said persons and/or

entities. persons or entities that distribute or sell TEMPLE products or programs, the Judge(s)

assigned to this case, and the attorneys of record in this case. Plaintiff reserves the right to amend

the Class definition if discovery and further investigation reveal that the Class should be

expanded or otherwise modified.

65.     The proposed Class Period is the time beginning three (3) years prior to the date of filing of this Class Action Complaint and extending to the date of prospective entry of Judgment for the Class.

66.     Plaintiffs do not know the exact size of the class, but it is reasonably estimated that the Class is composed of at least 550 persons. While the identities of Class members are unknown at this time, this information can be readily ascertained through appropriate discovery of the records maintained by Defendants.

67.     This action is properly brought as a class action because the proposed Class is so numerous and geographically dispersed throughout the United States that the joinder of all Class Members is impracticable.

68.     This action is properly brought as a class action because the disposition of Plaintiff's and proposed Class Members' claims in a class action will provide substantial benefits to both the parties and the Court.

69.     This action is properly brought as a class action because the proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class Member were infringed or violated in the same fashion.

70.     This action is properly brought as a class action because there are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members.

71.     Such common questions of law and fact include but are not limited to:

     (i) Whether TEMPLE engaged in fraudulent and deceptive business practices as defined by the CPL;

(ii) Whether Plaintiff and Class Members have been harmed and

the proper measure of relief;

(iii) Whether Plaintiff and Class Members are entitled to an award of treble, punitive

damages, attorneys' fees and expenses; and

(iv) Whether, Plaintiff and Class Members are entitled to equitable relief, and if so, the

nature of such relief.

72.      Plaintiff's claims are typical of the claims of the members of the proposed Class. Plaintiff

and Class Members have been injured by the same wrongful practices of TEMPLE. Plaintiff's

claims arise from the same practices and conduct that give rise to the claims of all Class

Members and are based on the same legal theories.

73.      Plaintiff will fairly and adequately protect the interests of the Class in that he has no

interests antagonistic to those of the other Class Members, and Plaintiff has retained attorneys

experienced in consumer class actions and complex litigation as counsel.

74.      A class action is superior to other available methods for the fair and efficient adjudication

of this controversy for at least the following reasons:

(i) Given the size of individual Class Member's claims and the expense of litigating those

claims, few, if any, Class Members could afford to or would seek legal redress

individually for the wrongs Defendant committed against them and absent Class

Members have no substantial interest in individually controlling the prosecution of

individual actions;

(ii)      This action will promote an orderly and expeditious administration and

adjudication of the proposed Class claims, economies of time, effort and resources will

be fostered, and uniformity of decisions will be insured;

13

(iii)     Without a class action, Class Members will continue to suffer damages, and TEMPLE'S violations of law will proceed without remedy while Defendant continues to reap and retain the proceeds of its wrongful conduct; and

(iv)     Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude class certification.

75.     TEMPLE, by its agents, servants and employees has access address and contact information for the Class Members, which may be used for the purpose of providing notice of the class action.

76.     Plaintiff seeks damages and equitable relief on behalf of the Class on grounds generally applicable to the entire proposed Class.

77.     A Class action is a superior and cost-effective method for the fair and efficient adjudication of the present controversy and there would accrue enormous savings to both the Courts and the Class in litigating the common issues on a class wide, instead of on a repetitive individual basis.

78.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would (a) establish incompatible standards of conduct of Defendants in this action and (b) create the risk that adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

## FIRST COUNT

79.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs above, as if fully set forth herein.

80.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law, ("CPL") is remedial legislation enacted to protect consumer confidence, ensure a level playing field for honest businesses and promote fair competition in the mass market economy.

81.     The CPL is construed in light of the principles and precedents pertaining to the FTCA Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 41-58 and was enacted for the protection of the public interest.

82.     The General Assembly amended the CPL in 1996 to emphasize that not only "fraudulent" but also "deceptive" acts or practices "creating a likelihood of confusion or misunderstanding" were forbidden. In fact, many of the unfair practices declared unlawful by the CPL have no parallel in the common law of fraud.

83.     TEMPLE is a "person," as defined by CPL § 201-2 (2), which provides that:

""Person" means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities."

84.     CPL § 201-9.2(a), which deals with private actions for alleged violations of that statute, uses the defined term "person" as follows:

"(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater."

85.     The CPL defines "unfair or deceptive acts or practices" by listing twenty (20) specific examples and then including a "Catchall" definition barring "any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

86.     TEMPLE violated and continues to violate the CPL by engaging in unfair methods of competition" and "unfair or deceptive acts or practices," specifically proscribed by the statute, affecting transactions with Plaintiff and Class Members.

87.     TEMPLE violated CPL § 201-2 (4)(ii) by engaging in unfair methods of competition" and "unfair or deceptive acts or practices" by "causing likelihood of confusion or of misunderstanding to prospective applicants and/or active students, as to the legitimacy of its Online MBA program.

88.     TEMPLE violated CPL § 201-2 (4)(iii) by engaging in unfair methods of competition" and "unfair or deceptive acts or practices" by "causing likelihood of confusion or of misunderstanding as to the validity of certification and No.1 ranking of its Online MBA program by the U.S. News and other educational ranking services.

89.     TEMPLE violated CPL § 201-2 (4)(v) by engaging in unfair methods of competition" and "unfair or deceptive acts or practices" by representing to U.S. News and other educational ranking services that its Online MBA program possessed certain characteristics, qualifications, requirements, benefits, and levels of attainment that were known not to actually exist at the time reported.

90.     TEMPLE violated CPL § 201-2 (4)(vii) by engaging in unfair methods of competition"
and "unfair or deceptive acts or practices" by representing that its Online MBA program was of a
particular standard, quality or grade, under circumstances in which it knew that such
representations and reporting were not true at the time made to U.S. Online MBA ranking
organizations.

91.     At all relevant times, TEMPLE knew that its Online MBA program's No. 1 ranking by
U.S. News, was based upon deception and fraudulent data reporting practices it employed.

92.     At all relevant times, TEMPLE knew that its Online MBA program's No. 1 ranking by
U.S. News, was a false representation of fact, based upon lies and fabricated data provided by
TEMPLE.

93.     TEMPLE'S unfair competition and deceptive practices, as described above, actually
deceived or had the tendency to deceive a substantial segment of its Online MBA student body,
prospective applicants to the Online MBA program and the general public at large.

94.     At all relevant times, TEMPLE knew that the false representations it made and the
misreporting of critical data to U.S News and other ranking organizations was necessary for it to
retain its No.1 U.S. News ranking for Online MBA programs.

95.     TEMPLE knew that its No.1 ranking from U.S. News provided significant leverage to
enable the school to increase enrollment in its online MBA offering.

96.     TEMPLE knew that its failure to achieve No.1 ranking from U.S. News was likely to
make a difference in the purchasing decisions of prospective applicants to TEMPLE'S Online
MBA program.

97. Plaintiff and members of the Class reasonably relied upon the fact that TEMPLE would truthfully and accurately submit information and critical data to U.S. News and other organizations that ranked U.S Online MBA programs.

98. Plaintiff and members of the Class had no means of knowing or learning that TEMPLE was engaged in the unfair methods of competition and deceptive acts or practices described herein.

99. If Plaintiff and/or members of the Class had knowledge of TEMPLE'S unfair methods of competition and deceptive acts or practices described herein, they would not have applied for admission to TEMPLE'S Online MBA program.

100. Plaintiff and members of the Class relied upon the apparent legitimacy of TEMPLE'S Online MBA program, to their pecuniary detriment and irreparable damage to their educational pedigree.

101. TEMPLE'S actions and conduct, as described herein was immoral, unethical, and unscrupulous.

102. TEMPLE'S actions and conduct, as described herein, have directly caused Plaintiff and members of the Class to have suffered ascertainable loss, due to the CPL violations alleged.

103. Plaintiff and members of the Class paid a premium to attend a recognized, top ranked Online MBA program and did not receive what they bargained for.

104. The loss sustained by Plaintiff and members of the Class, as a proximate result of TEMPLE'S CPL violations described herein, include perceived diminution in the academic value of a TEMPLE Online MBA degree and reduced opportunities in the workplace for recipients thereof.

105.    As a proximate result of TEMPLE'S continuing CPL violations, TEMPLE is liable to Plaintiff and Class members for compensatory damages.

106.    As a proximate result of TEMPLE'S continuing CPL violations, TEMPLE is liable to Plaintiff and Class members for consequential damages.

107.    As a proximate result of TEMPLE'S continuing CPL violations, TEMPLE is liable to Plaintiff and Class members for punitive damages.

108.    As a proximate result of TEMPLE'S continuing CPL violations, TEMPLE is liable to Plaintiff and Class members for reasonable attorney's fees and the costs of this litigation.

109.    Plaintiff is entitled to injunctive and other equitable relief, enjoining TEMPLE'S continuing CPL violations, as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Individually and on behalf of all others similarly situated, pray for Judgment as follows:

(a)     Certifying this case as a Class Action with Plaintiff as Class representative and his attorneys as Class counsel;

(b)     Awarding Judgment to Plaintiff for all available damages and other relief under the FIRST COUNT asserted;

(c)     Awarding Judgment to members of the Class for all available damages and other relief under the FIRST COUNT asserted;

(d)     Awarding Plaintiff and members of the Class their costs and disbursements, including reasonable attorney's fees;

(e)     Awarding Plaintiff and members of the Class pre-judgment and post-judgment interest;

(f)     Granting such other and further relief as may be deemed just and proper in the premises.

Dated: February 9, 2018

RESPECTFULLY SUBMITTED,

By:     _____

Jason T. Brown
**JTB LAW GROUP, LLC**
BBO #79369
155 2nd St, Suite 4
Jersey City, NJ 07302
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com

Steven Bennett Blau
BLAU, LEONARD LAW GROUP, LLC
Shelly A. Leonard
23 Green Street, Suite 303
Huntington, NY 11743
(631) 458-1010
Sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com

*Attorneys for Plaintiff*