IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLE SMITH, IBRAHIM FETAHI, SHAWN WYNN, ARA SARDARBEGIANS, RYAN FINK, CHRISTOPHER HAMILTON, JOHN THOMPSON and BRETT BONDS, Individually, and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br>vs.<br><br>TEMPLE UNIVERSITY,<br><br>                    Defendant. | 2:18-cv-00590-CMR<br><br>CLASS ACTION |

**DEFENDANT TEMPLE UNIVERSITY'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Temple University moves the Court to dismiss Plaintiffs' Amended Complaint.  The grounds for this Motion are set forth in more detail in the Memorandum of Law filed simultaneously herewith, which are incorporated by reference.

Dated:  June 4, 2018                             Respectfully submitted,


 _/s/ Joe H .Tucker_                          _/s/ Roberta D. Liebenberg_____
Joe H. Tucker, PA ID # 56617          Roberta D. Liebenberg, PA ID # 31738
Jessica Rickabaugh, PA ID # 200189   Gerard A. Dever, PA ID # 85291
**TUCKER LAW GROUP, LLC**              Jessica D. Khan, PA ID # 208875
Ten Penn Center                       **FINE, KAPLAN AND BLACK, RPC**
1801 Market Street, Suite 2500        One South Broad Street, 23rd Floor
Philadelphia, PA  19103               Philadelphia, PA  19107
Tel: 215-875-0609                     Tel: 215-567-6565
Fax: 215-559-6209                     Fax: 215-568-5872
jtucker@tlgattorneys.com              rliebenberg@finekaplan.com

Attorneys for Defendant Temple University

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KYLE SMITH, IBRAHIM FETAHI, SHAWN
WYNN, ARA SARDARBEGIANS, RYAN
FINK, CHRISTOPHER HAMILTON, JOHN
THOMPSON and BRETT BONDS,
Individually, and On Behalf of All Others
Similarly Situated,

             Plaintiffs,

vs.

TEMPLE UNIVERSITY,

             Defendant.

2:18-cv-00590-CMR

CLASS ACTION


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
TEMPLE UNIVERSITY'S MOTION TO DISMISS
<u>PLAINTIFFS' AMENDED COMPLAINT</u>**


Joe H. Tucker, PA ID # 56617
Jessica Rickabaugh, PA ID # 200189
**TUCKER LAW GROUP, LLC**
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA  19103
Tel: 215-875-0609
Fax: 215-559-6209
jtucker@tlgattorneys.com

Roberta D. Liebenberg, PA ID # 31738
Gerard A. Dever, PA ID # 85291
Jessica D. Khan, PA ID # 208875
**FINE, KAPLAN AND BLACK, RPC**
One South Broad Street, 23rd Floor
Philadelphia, PA  19107
Tel: 215-567-6565
Fax: 215-568-5872
rliebenberg@finekaplan.com


Attorneys for Defendant Temple University

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................................1

II. THE ALLEGATIONS IN THE AMENDED COMPLAINT...............................4

III. ARGUMENT .................................................................................................6

   A.  The Standards Applicable To Motions to Dismiss ..................................6

   B.  Plaintiffs' Alleged Damages Are Speculative ........................................6

      1.  Pennsylvania Law Does Not Allow Claims Based on
          Speculative Damages .......................................................................7

      2.  Courts In Other Jurisdictions Have Dismissed Complaints In
          Analogous Cases Because The Alleged Damages Were Speculative ............11

   C.  Additional Reasons Why Plaintiffs' Breach of Contract Claim is
       Legally Deficient ................................................................................17

   D.  Additional Reasons Why Plaintiffs' Unjust Enrichment Claim is
       Legally Deficient ................................................................................21

IV. CONCLUSION...............................................................................................23

TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Wells Fargo, N.A.*, No. 14-cv-5283,
   2015 WL 5137953 (E.D. Pa. Aug. 28, 2015) .......................................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007). .................................................................................................................... 6

*Benner v. Bank of Am., N.A.*,
   917 F. Supp. 2d 338 (E.D. Pa. 2013) ...................................................................................... 10

*Bevelacqua v. Brooklyn Law Sch.*, No. 500175/2012,
   2013 WL 1761504 (N.Y. Sup. Ct. Apr. 22, 2013) ................................................................ 16

*Bleday v. OUM Group*,
   645 A.2d 1358 (Pa. Super. 1994) ...................................................................................... 7, 11

*Bradshaw v. Pennsylvania State Univ.*, No. 10-cv-4839,
   2011 WL 1288681 (E.D. Pa. Apr. 5, 2011) ........................................................................... 23

*Brown & Brown Inc. v. Cola,* No. 10-cv-3898,
   2011 WL 2745808 (E.D. Pa. July 13, 2011) ........................................................................... 8

*Cohen v. Pelagatti*,
   528 A.2d 657 (Pa. Super. 1987) ..................................................................................... 7, 8, 11

*David v. Neumann Univ.*,
   187 F. Supp. 3d 554 (E.D. Pa. 2016) ..................................................................................... 20

*Doe v. The Trustees of the Univ. of Pennsylvania*,
   270 F. Supp. 3d 799 (E.D. Pa. 2017) ..................................................................................... 20

*Eagle v. Morgan*, No. 11-cv-4303,
   2013 WL 943350 (E.D. Pa. Mar. 12, 2013) ............................................................................ 8

*Gomez-Jimenez v. New York Law School*,
   943 N.Y.S.2d 834 (N.Y. Sup. Ct. 2012),
   *aff'd,* 956 N.Y.S.2d 54 (N.Y. App. Div. 2012) ............................................................ 3, 15, 16

*Harnish v. Widener Univ. School of Law*,
   833 F.3d 298 (3d Cir. 2016) ............................................................................................ 16, 17

*Highway Express Lines, Inc. v. Winter*,
   200 A.2d 300 (Pa. 1964) ................................................................................ 7

*In re Avandia Marketing, Sales Practices and Products Liability Litig.*, MDL No. 1871,
   2013 WL 3486907 (E.D. Pa. July 10, 2013) .................................................. 4

*Kaymark v. Bank of Am., N.A.*,
   11 F. Supp. 3d 496 (W.D. Pa. 2014). ........................................................ 9, 11

*Kaymark v. Bank of America, N.A.*,
   783 F.3d 168 (3d Cir. 2015) ................................................................ 8, 9, 10

*Khawaja v. RE/MAX Cent.*,
   151 A.3d 626 (Pa. Super. 2016) .................................................................. 21

*Magill v. Westinghouse Elec. Corp.*,
   464 F.2d 294 (3d Cir. 1972) ..................................................................... 3, 8

*Marabella v. Borough of Conshohocken*, No. 16-cv-1153,
   2016 U.S. Dist. LEXIS 157471 (E.D. Pa. Nov. 10, 2016) ............................ 20

*McCabe v. Marywood Univ.*,
   166 A.3d 1257 (Pa. Super. 2017). .................................................... 18, 19, 22

*Motown Record Co., L.P. v. Kovalcik*, No. 07-cv-4702,
   2009 WL 455137 (E.D. Pa. Feb. 23, 2009) ............................................. 6, 11

*Murphy v. Bank of Am., N.A.*, No. 13-cv-5719,
   2016 WL 1020969 (E.D. Pa. Mar. 14, 2016) ............................................... 10

*Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*,
   518 F.Appx. 58 (3d Cir. 2013) .............................................................. 19, 20

*Northview Motors, Inc. v. Chrysler Motors Corp.*,
   227 F.3d 78 (3d Cir. 2000) ........................................................................ 20

*Pashak v. Barish*,
   450 A.2d 67 (Pa. Super. 1982) ..................................................................... 8

*Petrizzo v. DeVry Education Group, Inc.*, No. 16-cv-9754,
   2018 WL 827995 (N.D. Ill. Feb. 12, 2018) ........................... 3, 4, 11, 12, 13

*Phillips v. DePaul University*,
   19 N.E.3d 1019 (Ill. App. 2014) ......................................................... 13, 14, 15

*Renkiewicz v. Commercial Union Life Ins. Co. of Am.*, No. 98-CV-1564,
   1999 WL 820452 (E.D. Pa. Sept. 29, 1999)...............................................................8

*Schwarzwaelder v. Fox*,
   895 A.2d 614 (Pa. Super. 2006) ...........................................................................10

*Sheinman Provisions, Inc. v. Nat'l Deli, LLC*, No. 08-cv-453,
   2008 WL 2758029 (E.D. Pa. July 15, 2008) ..................................................20, 21

*Solomon v. Guardian Life Ins. Co. of Am.*, No. 96-cv-1597,
   1996 WL 741888 (E.D. Pa. Dec. 10, 1996) ............................................................8

*Stevenson v. Economy Bank of Ambridge*,
   197 A.2d 721 (Pa. 1964) ..............................................................................3, 7, 8

*Trunzo v. CitiMortgage*,
   43 F. Supp. 3d 517 (W.D. Pa. 2014) ....................................................................10

*Vantage Learning (USA), LLC v. Edgenuity*,
   246 F. Supp. 3d 1097 (E.D. Pa. 2017) ..................................................................21

*Weinberg v. Sun Co., Inc.*,
   777 A.2d 442 (Pa. 2001) .......................................................................................9

*WFIC, LLC v. LaBarre*,
   148 A.3d 812 (Pa. Super. 2016) ..........................................................................22


**Statutes**

Pennsylvania Unfair Trade Practices and Consumer Protection Law,
 73 P.S. §§ 201-1, *et seq.*...................................................................................*passim*

Defendant Temple University ("Temple") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint.

## I.     INTRODUCTION

Plaintiffs, who enrolled in the Online MBA Program at Temple University's Fox School of Business and Management ("Fox"), have filed a putative class action in the immediate wake of a decision by U.S. News & World Report in January 2018 to change its ranking of the Fox Online MBA Program. The magazine moved the Program to the "unranked" category for 2018 and eliminated any references on its website to the Program's former number one ranking for 2015-2018. (Am. Compl. at ¶¶ 150, 153). This change in rankings was prompted by Fox's notification to U.S. News & World Report that Fox had previously erred when it reported the number of students in its 2016-2017 entering class who submitted GMAT scores. (*Id*. at ¶¶ 141-142).

The Amended Complaint represents the second bite at the apple by plaintiffs' counsel. The original Complaint, filed solely by plaintiff Kyle Smith, only alleged a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"). The gravamen of the original Complaint was the allegation that Fox's loss of its number one ranking for its Online MBA Program "will have a long reaching negative impact on [the] school's reputation, prestige and peer ratings." (Compl. at ¶ 56). The Complaint alleged that the diminution in Fox's reputation would, in turn, lead to a "perceived diminution in the academic value of a TEMPLE Online MBA degree and reduced opportunities in the workplace for recipients thereof." (*Id*. at ¶ 104) (capitalization in original).

Temple moved to dismiss the original Complaint on the ground that Smith's alleged damages were entirely speculative, because he did not allege any facts showing that the very recent change in Fox's ranking by U.S. News & World Report had actually led to any

adverse consequences for him either in his current employment or with a prospective employer. Thus, because his alleged damages were speculative, he had failed to plead an "ascertainable loss," as required by the UTPCPL, 73 P.S. § 201-9.2(a).  Temple separately moved to strike the class claims from the Complaint, because the UTPCPL requires proof of detrimental reliance, and courts have consistently held that the reliance requirement precludes class certification.

Plaintiffs' counsel apparently recognized that Temple's arguments were compelling, because rather than opposing its motions, they instead elected to start over with an Amended Complaint.  They added seven new plaintiffs; kept the UTPCPL claim but asserted it on an *individual* basis rather than a class-wide basis; and sought to overcome the reliance issue by repackaging the UTPCPL claim as common law claims for breach of contract and unjust enrichment, each of which is brought on a class-wide basis.  They also added new allegations that they paid higher tuition than they should have paid in light of the subsequent change in the ranking of Fox's Online MBA Program by U.S. News & World Report.

However, the Amended Complaint is just as legally deficient as its predecessor because the alleged damages are still purely speculative.  Plaintiffs' Amended Complaint rehashes the exact same allegations concerning the effect of the change in rankings on students enrolled in the Fox Online MBA Program as the prior Complaint.  (Compl. at ¶¶ 48-56; Am. Compl. at ¶¶ 156-164).  In particular, the alleged harm is still tied to the underlying claim that the rankings change by U.S. News & World Report "will have a long reaching negative impact on [the] school's reputation, prestige and peer ratings," thus potentially harming students' future employment prospects. (Compl. at ¶ 56; Am. Compl. at ¶¶ 164, 202).   In particular, plaintiffs still allege that, as a result of the change in ranking of the Fox Online MBA Program, there will be a "perceived diminution in the academic value of a TEMPLE Online MBA degree and

reduced opportunities in the workplace for recipients thereof."  (Am. Compl. at ¶ 254) (capitalization in original).

Plaintiffs' claim that they will have "reduced opportunities in the workplace" because of the January 2018 change in Fox's ranking by U.S. News & World Report is speculative and conjectural on its face.  Indeed, conspicuous by its absence from plaintiffs' lengthy Amended Complaint is any allegation that the change in Fox's ranking has adversely affected any plaintiff's current employment status or caused the loss of any potential job opportunity.  Nor do plaintiffs claim that their MBA online education at Fox was substandard.

As recognized by the Third Circuit, "the Pennsylvania Supreme Court 'has held repeatedly that a claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough.'"  *Magill v. Westinghouse Elec. Corp.*, 464 F.2d 294, 300 (3d Cir. 1972), *quoting Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 727 (Pa. 1964).

Moreover, in the past few years, a number of courts have dismissed lawsuits against educational institutions that were premised on the schools' dissemination of allegedly false statistics touting the employment rates and salaries of their recent graduates.  Plaintiffs in those cases relied upon the same theories and claims as those advanced here, such as the "inflated tuition" theory alleged in the Amended Complaint.  The courts in those analogous cases dismissed the complaints as legally deficient because, *inter alia*, the alleged damages were speculative.  The courts' opinions emphasized that the plaintiffs "do not challenge the quality of the education they received."  *Gomez-Jimenez v. New York Law School*, 943 N.Y.S.2d 834, 844 (N.Y. Sup. Ct. 2012), *aff'd,* 956 N.Y.S.2d 54 (N.Y. App. Div. 2012).  *Accord Petrizzo v. DeVry Education Group, Inc.*, No. 16-cv-9754, 2018 WL 827995, at *6 (N.D. Ill. Feb. 12, 2018)

("Plaintiffs do not allege that any particular facet of the quality of their education or the degree they received was inadequate, or that they were promised a certain employment outcome.").  The same is true here as well.

Plaintiffs in those cases alleged that, despite the rosy statistics disseminated by their schools concerning recent graduates' employment rates and salaries, they ended up either unemployed or in inferior, low paying jobs after graduation.  It follows *a fortiori* that since their damages claims were too speculative to proceed, the same is true here, as Fox did not make any allegedly false representations concerning graduates' employment rates and salaries and none of the plaintiffs allege that they missed out on any prospective job as a result of the very recent change in Fox's ranking.

Accordingly, for the reasons set forth more fully below, the Amended Complaint should be dismissed on the ground that the alleged damages are speculative.  Because there are no facts that could be pled by plaintiffs to demonstrate that they have actually suffered any damages, any effort to further amend their legally deficient Amended Complaint would be futile.[1]  Therefore, Temple respectfully submits that the Amended Complaint should be dismissed with prejudice.

## II.     THE ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiffs' allegations relate to Fox's reporting of data to U.S. News & World Report.  The specific data that gives rise to this lawsuit was the number of students in the 2016-2017 entering class at Fox's Online MBA Program who had submitted GMAT scores.  (Am. Compl. at ¶ 142).  Shortly after the 2018 rankings were released in January 2018, Fox recognized that the data was erroneous and self-reported it to U.S. News & World Report, which then

---

[1] *See, e.g., In re Avandia Marketing, Sales Practices and Products Liability Litig*., MDL No. 1871, 2013 WL 3486907, at *3, n.26 (E.D. Pa. July 10, 2013) (Rufe, J.).

moved Fox's Online MBA Program to the "unranked" category for 2018.  (*Id.* at ¶¶ 141-142; 150, 153).  Before the error was discovered, Fox was ranked number one on U.S. News & World Report's rankings of online MBA programs from 2015 to 2018, and ninth in 2014.  (*Id.* at ¶¶ 136-137).

Plaintiffs' counsel have filed an unduly lengthy Amended Complaint in an obvious effort to mask the paucity of allegations devoted to the alleged effect of the rankings change on students enrolled in Fox's Online MBA Program.  (*Id.* at ¶¶ 156-164).  The central allegation, which is set forth **twice** in the Amended Complaint, is as follows:

> The subject scandal has raised grave concerns about the integrity of TEMPLE'S Administration and will have a long reaching negative impact on [the] school's reputation, prestige and peer ratings.

(Am. Compl. at ¶¶ 164, 202) (capitalization in original).

Plaintiffs further allege that the change in the ranking of Fox's Online MBA Program by U.S. News & World Report has "raised grave concerns about the value and legitimacy of a TEMPLE Online MBA degree" (*id*. at ¶ 201) and will cause a "perceived diminution in the academic value of a TEMPLE Online MBA degree and reduced opportunities in the workplace for recipients thereof."  (*Id*. at ¶ 254) (capitalization in original).

Significantly, however, none of the plaintiffs allege that the change in the ranking of Fox's Online MBA Program has had any adverse impact on their current employment or has caused them to lose out on any prospective job opportunity they would have otherwise obtained.

Plaintiffs each allege that their decision to enroll in the Fox Online MBA Program was based on its number one ranking by U.S. News & World Report and that they would have enrolled elsewhere but for that ranking.  They seek damages "equal to what Plaintiffs would have received, if the representations underlying TEMPLE'S No. 1 Online MBA ranking, had been

true." (*Id*. at ¶ 204) (capitalization in original).  However, nowhere in their 259 paragraph, 42-page Amended Complaint do they allege, nor could they allege, that their MBA online education at Fox has been substandard.

Plaintiffs' Amended Complaint is comprised of three claims.  Count One is labeled "Breach of Contract," but is replete with allegations concerning the duty of good faith and fair dealing.  (*See* Am. Compl. at ¶¶ 189-194).  Count Two incorporates the breach of contract allegations and alleges a claim for unjust enrichment, and Count Three alleges a violation of the UTPCPL.  The two common law claims are brought on a class-wide basis, while the UTPCPL claim is brought on an individual basis.

## III.   ARGUMENT

### A.   The Standards Applicable to Motions to Dismiss.

The standards governing a motion to dismiss are well-established.  As this Court has often recognized, although the well-pleaded factual allegations of the Complaint must be accepted as true, "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do without the allegation of sufficient facts in support." *Motown Record Co., L.P. v. Kovalcik*, No. 07-cv-4702, 2009 WL 455137, at *2 (E.D. Pa. Feb. 23, 2009) (Rufe, J.), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, "[i]n order to survive a motion to dismiss, a plaintiff must allege facts that *'raise a right to relief above the speculative level*….'" *Motown*, 2009 WL 455137, at *2 (emphasis added), *quoting Twombly*, 550 U.S. at 555.

### B.   Plaintiffs' Alleged Damages Are Speculative.

Plaintiffs have not alleged that the Fox Online MBA education they are now receiving or have already received is substandard.  Also, plaintiffs' Amended Complaint alleges

only a "perceived" diminution, not an actual diminution, in the academic value of a Fox online

MBA degree as a result of the rankings change.  (Am. Compl. at ¶ 254).  Moreover, even

assuming *arguendo* the truth of the plaintiffs' repeated allegation that the Fox Online MBA

Program has suffered reputational harm, this does not demonstrate that, as a result, plaintiffs

have suffered any actual damages.  Indeed, plaintiffs do not allege that, as a result of the change

to Fox's status in the U.S. News & World Report rankings, they were adversely affected in their

current employment in any respect.  Nor have any of the plaintiffs alleged that they were denied

a job by any prospective employer as a proximate result of the U.S. News & World Report

rankings controversy, which arose only three weeks before this lawsuit was filed.  Instead, the

Amended Complaint is based on pure conjecture as to plaintiffs' supposedly diminished future

employment prospects.  This rank speculation is plainly insufficient to state a cognizable claim

for damages under any of the three causes of action alleged in the Amended Complaint.

### 1.  Pennsylvania Law Does Not Allow Claims Based On Speculative Damages

The Pennsylvania Supreme Court has long made it clear that "the law takes

cognizance of neither speculative contracts nor speculative damages, but only such as are fixed

and definite."  *Highway Express Lines, Inc. v. Winter*, 200 A.2d 300, 303 (Pa. 1964).  *Accord*

*Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 727 (Pa. 1964) ("We are unable to

accept this speculative circumstance as a basis for awarding real or compensatory damages in

this proceeding.… This Court has repeatedly held that a claim for damages must be supported by

a reasonable basis for calculation; mere guess or speculation is not enough.").  *See also Bleday v.*

*OUM Group*, 645 A.2d 1358, 1363 (Pa. Super. 1994) (affirming dismissal of complaint because

plaintiffs "merely allege damages which are speculative" and which "may occur prospectively");

*Cohen v. Pelagatti*, 528 A.2d 657, 658-59 (Pa. Super. 1987) ("Where the harm alleged is either

speculative, or involves a threat of future harm only, the fact of damages is uncertain, and does not suffice to create a cause of action."); *Pashak v. Barish*, 450 A.2d 67, 69 (Pa. Super. 1982) (affirming dismissal of complaint where plaintiff's loss was "too conjectural and remote").

These cases have been followed by the federal courts in Pennsylvania. *See, e.g., Magill v. Westinghouse Elec. Corp.*, 464 F.2d 294, 300 (3d Cir. 1972) (quoting admonition in *Stevenson* that "a claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough"); *Eagle v. Morgan*, No. 11-cv-4303, 2013 WL 943350, at *13 (E.D. Pa. Mar. 12, 2013) (*quoting Stevenson* and holding that plaintiff's claimed damages were "based on mere guess or speculation" and were "legally insufficient"; "Plaintiff has not established *the fact* of damage with reasonable certainty") (emphasis in original).

The entirely speculative nature of plaintiffs' alleged damages is fatal to their common law claims for breach of contract and unjust enrichment as well as their individual claims under the UTPCPL. *See Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 180-83 (3d Cir. 2015) (affirming dismissal of both UTPCPL and common law contract claims because plaintiff failed to plead non-speculative damages); *Brown & Brown Inc. v. Cola,* No. 10-cv-3898, 2011 WL 2745808, at *7-8 (E.D. Pa. July 13, 2011) (concluding breach of contract counterclaim could not survive motion to dismiss because alleged damages were "entirely too speculative"); *Renkiewicz v. Commercial Union Life Ins. Co. of Am.,* No. 98-CV-1564, 1999 WL 820452, at *3 (E.D. Pa. Sept. 29, 1999) (dismissing breach of contract and unjust enrichment claims because damages sought were "speculative" and "contingent"); *Solomon v. Guardian Life Ins. Co. of Am.*, No. 96-cv-1597, 1996 WL 741888, at *2-5 (E.D. Pa. Dec. 10, 1996) (dismissing breach of contract, UTPCPL, and unjust enrichment claims because plaintiff did not adequately plead damages).

8

Plaintiffs' speculative damages theory is insufficient to satisfy the rigorous requirements of the UTPCPL, which requires a plaintiff to show an "ascertainable loss" that was suffered "as a result of the defendant's prohibited conduct under the statute." *Kaymark*, 783 F.3d at 180, citing 73 P.S. § 201-9.2(a). *See also Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001) ("The statute clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a *result of* the defendant's prohibited action.") (italics in original).

In a number of cases, courts have dismissed UTPCPL claims where, as here, the alleged damages were purely speculative and thus did not rise to the level of ascertainable loss. The leading case is *Kaymark*. In that case, after Bank of America filed a foreclosure action against Kaymark, he filed suit against the Bank and brought a UTPCPL claim. He alleged that the Bank's foreclosure complaint "contained unauthorized attorneys' fees and other fees, and these fees caused a diminution in value of his property equal to the fees." *Kaymark v. Bank of Am., N.A.*, 11 F. Supp. 3d 496, 499 (W.D. Pa. 2014). However, the District Court granted the Bank's motion to dismiss the UTPCPL claim because plaintiff had not pleaded sufficient facts to demonstrate an ascertainable loss. The Court stated:

> Plaintiff does not argue an actual loss, but alleges a speculative loss based on the alleged diminution in value of his property.… *Plaintiff's argument is couched in forward-looking speculative terms, which are insufficient to establish ascertainable loss under the PUTPCPL. In short, the law calls for loss that can be identified with some level of certainty*.

*Id*. at 499 (emphasis added).

On appeal, the Third Circuit affirmed the dismissal of the UTPCPL claim, holding that plaintiff "has not suffered actual loss" because he was not deprived of his property and never paid the disputed fees sought in the Bank's foreclosure complaint. 783 F.3d at 180. The Court

found that plaintiff's alleged "temporary" injury was "too speculative, standing alone, to qualify for the protection of the UTPCPL." *Id*. at 181.

A number of other cases have likewise held UTPCPL claims to be legally deficient where ascertainable loss had not been pleaded adequately. *See, e.g., Schwarzwaelder v. Fox*, 895 A.2d 614, 619 (Pa. Super. 2006) (affirming dismissal of UTPCPL claim because plaintiffs' claimed damages were "wholly speculative"); *Murphy v. Bank of Am., N.A.*, No. 13-cv-5719, 2016 WL 1020969, at *6 (E.D. Pa. Mar. 14, 2016) (dismissing UTPCPL claim based on *Kaymark* because damages claim was "'too speculative' to be considered an ascertainable loss under the UTPCPL"); *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 360 and n.16 (E.D. Pa. 2013) (dismissing UTPCPL claim because of failure to show an ascertainable loss; "[a]t this point, the loss is merely a possible loss, which is insufficient to establish a UTPCPL claim"); *Allen v. Wells Fargo, N.A.*, No. 14-cv-5283, 2015 WL 5137953, at *8 (E.D. Pa. Aug. 28, 2015) (UTPCPL claim dismissed because plaintiff's claims of damage to his credit score "are too speculative to rise to the level of an actual, ascertainable loss of money or property required to state a claim under the UTPCPL"); *Trunzo v. CitiMortgage*, 43 F. Supp. 3d 517, 522 (W.D. Pa. 2014) (UTPCPL claim was legally deficient because "Plaintiffs have failed to plausibly allege that they suffered any loss of 'money or property' through the mere issuance of payment demands on Citi's behalf.").

The many cases cited above are directly on point. Plaintiffs' Amended Complaint does not allege any facts that, even if deemed true, would show that they have actually suffered any compensable damages. Their contention that the change in Fox's ranking by U.S. News & World Report will have a "negative impact on [the] school's reputation, prestige and peer ratings," which in turn will likely cause a "perceived diminution in the academic value of a

TEMPLE Online MBA degree and reduced opportunities in the workplace for recipients thereof" (Am. Compl. at ¶¶ 164, 202, 254) rests on conjecture and speculation concerning what may (or may not) happen in the future.  Just as in *Kaymark*, "Plaintiff's argument is couched in forward-looking speculative terms …" 11 F. Supp. 3d at 499.  *Accord Bleday*, 645 A.2d at 1363 (plaintiffs merely alleged speculative damages which "may occur prospectively."); *Cohen*, 528 A. 2d at 658-59 (where the harm alleged "involves a threat of future harm only, the fact of damages is uncertain, and does not suffice to create a cause of action.").

Plaintiffs have failed to allege facts that "raise a right to relief above the speculative level."  *Motown*, 2009 WL 455137, at *2.  Therefore, the Amended Complaint should be dismissed.

### 2. Courts In Other Jurisdictions Have Dismissed Complaints In Analogous Cases Because The Alleged Damages Were Speculative

In addition to the foregoing Pennsylvania cases, there are several highly instructive recent decisions from other jurisdictions dismissing class actions against law schools and other educational institutions that were based on the schools' dissemination of allegedly false and deceptive statistics concerning the supposedly favorable employment rates and salaries of their recent graduates.  The plaintiffs in those cases alleged that their enrollment decisions were based on these inflated figures, and after graduation they experienced difficulty in finding suitable employment.  Like the Pennsylvania cases discussed above, the courts in these cases held that the complaints were legally deficient because the alleged damages were speculative.

In the very recent decision in the *DeVry* case, the court dismissed a class action complaint that was based on allegedly false advertising by DeVry that 90% of its graduates obtained new jobs in their fields of study within six months of graduation.  2018 WL 827995, at *1.  Plaintiffs alleged that they relied on these advertisements when deciding to enroll in DeVry,

and were unable to find jobs in their fields of study within six months of graduation.  *Id.* at *2.

Plaintiffs asserted claims under the consumer fraud statutes of Illinois and other states, as well as

a claim for unjust enrichment.

The court stated that "Plaintiffs' alleged injury appears to be their inability to

obtain new jobs in their fields of study within six months of graduation."  *Id.* at *4.  But it

pointed out that "a damages theory based on plaintiffs' employment outcomes is invalid"

because "[a] number of factors contribute to a successful job search," not just the school that one

attended.  *Id*.  The court went on to conclude as follows:

> The complaint does not address any of the circumstances
> surrounding plaintiffs' job searches and thus cannot plausibly
> allege the causal relationship, required in any tort claim, between
> an unfavorable employment outcome and any plaintiff's decision
> to enroll and remain enrolled in DeVry in reliance upon advertised
> employment data.

*Id*.

Plaintiffs' alleged damages in the instant case are even more speculative than in

*DeVry*, as none of the plaintiffs here allege "an unfavorable employment outcome" attributable

to their having enrolled in the Fox Online MBA Program.  It follows that dismissal is warranted

here as well.

In *DeVry*, the plaintiffs recognized that seeking damages based on their

unsuccessful job searches was doomed to failure, so they proffered an alternative damages

theory:

> Plaintiffs instead propose a theory of damages based on the
> difference between what they actually paid and what they would
> have paid, if anything, had they known the true facts.  The
> complaint alleges that they would have either paid less money or
> would not have enrolled at all, had they known the truth behind the
> advertised employment statistics.

*Id*. at *5.

However, the court found this damages theory to be speculative as well, holding as follows:

> [I]t would seem that the difference between the true value [of the DeVry degree] and the inflated value *can only be based on speculative post-graduate career prospects and earning potential. Plaintiffs do not allege that any particular facet of the quality of their education or the degree they received was inadequate, or that they were promised a certain employment outcome*…. A consumer-fraud complaint need not allege a precise damages amount or a fully-developed mathematical model for calculating damages. *But it needs to allege facts sufficient to show that plaintiffs suffered actual, measurable, non-speculative damages. The complaint here falls short*.

*Id*. at *6 (emphasis added).

Plaintiffs here have relied upon the exact same flawed inflated tuition theory that was properly rejected by the court in *DeVry*. *See* Am. Compl. at ¶¶ 200, 204-205.  But just as in *DeVry*, the plaintiffs here do not allege that their business school education at Fox "was inadequate, or that they were promised a certain employment outcome" if they enrolled in Fox's Online MBA Program.  *DeVry*, 2018 WL 827995, at *6.  Also, just as in *DeVry*, the Amended Complaint "falls short" because the "true value" of the Fox degree and the "inflated value" "can only be based on speculative post-graduate career prospects and earning potential."  *Id*.

The *DeVry* decision relied on several similar cases, one of which was *Phillips v. DePaul University*, 19 N.E.3d 1019 (Ill. App. 2014).  In that case, graduates of DePaul's law school brought a class action alleging that they enrolled based on misleading employment and salary statistics concerning recent graduates transmitted by DePaul to U.S. News & World Report, the ABA, and the National Association for Law Placement.  *Id*. at 1025.  Plaintiffs alleged claims under the Illinois Consumer Fraud and Deceptive Business Practices Act and for common law fraud and negligent misrepresentation.

13

The trial court dismissed the complaint because plaintiffs' damages theory, which was "based on their post- graduate jobs and incomes" (*id*. at 1032), was too speculative.  That ruling was affirmed on appeal.  The Court of Appeals agreed with the trial court that "a law school graduate's success in obtaining the job and lifetime salary he/she desires is the result of a multitude of factors."[2]  *Id*. at 1033.  Moreover, "[g]iven the myriad factors that go into a successful job search and career earnings," it cannot be established that, but for the allegedly misleading statistics, the plaintiffs "would have obtained their desired jobs/salaries even upon graduation from different law schools."  *Id*.

The Court of Appeals emphasized in *DePaul* that "[t]o sufficiently plead a cause of action under the [Illinois] Consumer Fraud Act, plaintiffs must plead actual damages…. *Damages may not be predicated on mere speculation, hypothesis, conjecture or whim*."  *Id*. at 1034 (emphasis added).  The Court agreed with the trial court that in light of the numerous factors impacting an attorney's ability to obtain a particular job and salary, "[n]one of these factors can be determined with any kind of certainty and, therefore, the amount of damages, if any, sustained by [p]laintiffs is wholly speculative."  *Id*. at 1035.

In *DePaul*, plaintiffs had alleged damages based on the difference between what they paid in tuition to DePaul in reliance on the allegedly overstated employment and salary statistics for recent graduates and "what they should have paid in tuition based on the 'true' value

---

[2] These factors include, but are not limited to, the following:  "the state of the economy, the overall availability of jobs in the legal profession, the overall academic record of the graduate, any practical experience of the graduate such as summer associate positions, internships and clinics, the efforts put into obtaining legal employment, whether the graduate interviews well, and the geographic area in which employment is sought.  Additional factors impacting the amount a lawyer may or may not earn over a lifetime include, but are not limited to, whether the lawyer chooses to practice in the private or public sector, whether the lawyer takes time off for childrearing or other reasons, whether the lawyer, if in private practice, makes partner, economic conditions over the course of the lawyer's lifetime, etc."  19 N.E. 3d at 1033.

of a DePaul degree." *Id*. at 1034.  The court held that plaintiffs "failed to plead any reliable

mechanism for calculating the 'true' value of their law degrees because of the alleged

misrepresentation." *Id*.  That conclusion applies with equal force to plaintiffs' similar damages

theory in this case.  *See* Am. Compl. at ¶ 204.

      Also directly on point is the decision in *Gomez-Jimenez,* 943 N.Y.S.2d 834.

Plaintiffs' class action alleged violations of the New York Consumer Fraud statute (General

Business Law §349) and common law fraud and misrepresentation based on New York Law

School's dissemination of allegedly misleading and deceptive statistics concerning recent

graduates' employment rates and salaries.  *Id*. at 837.  Plaintiffs alleged that the inflated statistics

induced them to enroll at New York Law School because obtaining a degree there meant that a

"high paying, full-time, permanent job was highly likely."  *Id*. at 837, 847.  Just as in this case,

"plaintiffs' sole objection to the degrees they earned at NYLS is purely in employment terms"

and "plaintiffs do not challenge the quality of the education they received."  *Id*. at 844, 847.

      Also identical to the Amended Complaint in this case was the plaintiffs'

allegation that, had they been aware that the published information concerning the employment

and salaries of New York Law School graduates was false, they would have elected to either

"pay less to NYLS or perhaps not attend the school at all."  *Id.* at 848.[3]  Their argument was that

"[t]his is a case about a product being mislabeled; and because that product is mislabeled, the

law school can charge a premium for it."  *Id.* at 849.  They sought damages "equal to the

difference between the alleged inflated tuition they paid because of the allegedly misleading

statements and what they characterize as the 'true value' of a NYLS degree."  *Id.* at 837.

---

[3] *See* Am. Compl. at ¶¶ 199-200 (alleging that if plaintiffs had known of the change in Fox's
ranking by U.S. News & World Report, they would not have applied for admission to its Online
MBA Program or would not have agreed to pay as much for tuition at Fox.).

Plaintiffs not only sought restitution and disgorgement of all tuition payments, but also "consequential costs," such as interest on loans, books, traveling and housing expenses. *Id*. at 847.

The court held that plaintiffs were asking it to engage in "impermissible speculation" concerning their damages and concluded as follows:

> To measure damages based on the difference in value between a degree which guarantees a good legal job, as defined by plaintiffs, and one that does not … would require the court to engage in naked speculation. This the court cannot do.

*Id*. at 849, 857. *See also id*. at 857 ("plaintiffs' theory of damages, that is, an award of the difference between what they paid for their law degree and an amount representing its ostensibly lesser intrinsic worth because the degree has not sufficed as an entrance ticket for the type of jobs plaintiffs hoped to obtain, is entirely too speculative and remote to be quantified as a remedy under the law."). *Accord Bevelacqua v. Brooklyn Law Sch.*, No. 500175/2012, 2013 WL 1761504, at *9 n.13 (N.Y. Sup. Ct. Apr. 22, 2013) (dismissing class action based on Brooklyn Law School's dissemination of allegedly misleading employment and salary information of recent graduates to U.S. News & World Report and ABA; plaintiffs' damages theory, which sought damages based on the difference between the "inflated tuition" paid in reliance upon Brooklyn Law School's alleged misrepresentations and the "true value" of a Brooklyn Law School degree, necessitated "improper speculation, requiring dismissal of the claims.").

Also significant here is the Third Circuit's decision in *Harnish v. Widener Univ. School of Law*, 833 F.3d 298 (3d Cir. 2016). Plaintiffs alleged that Widener had induced them to enroll by misrepresenting that 90-97% of its graduates were employed after graduation. *Id*. at 302. They claimed that these misleading statistics "enabled Widener to charge its students 'inflated' tuition - that is, higher than what Widener would have received if full and accurate

statistics were published instead." *Id*.  Stated differently, "Widener's misrepresentations caused them to pay more for their education than it was truly worth." *Id*. at 309.  They sought damages "equal to the amount of tuition that students allegedly overpaid." *Id*. at 302.

The Third Circuit affirmed the trial court's order denying class certification, and criticized plaintiffs' "inflated-tuition theory," noting that it "has been rejected by the New Jersey and Delaware courts outside the federal securities fraud context." *Id*. at 309.  The Third Circuit characterized plaintiffs' "inflated-tuition theory" as "non-cognizable." *Id*.  It emphasized that "the ascertainable-loss and causal-relationship elements of the NJCFA [New Jersey Consumer Fraud Act] and the DCFA [Delaware Consumer Fraud Act] are not met by the kind of price-inflation theory discussed above and advanced by the plaintiffs." *Id*. at 312.

Even though the "inflated-tuition theory" in *Widener* was found by the Third Circuit to be "non-cognizable," the plaintiffs in this case have nevertheless relied upon it in their Amended Complaint.  They contend that Fox's former No. 1 ranking for its Online MBA Program enabled it to charge "premiums for tuition," and they seek to recover the alleged overpayment.  (Am. Compl. at ¶¶ 200, 204-5).  However, that fundamentally flawed damages theory was rejected not only by the Third Circuit, but also by the many other decisions discussed above.  Consistent with those cases, Temple respectfully submits that the Amended Complaint should be dismissed with prejudice.

### C.    Additional Reasons Why Plaintiffs' Breach of Contract Claim is Legally Deficient

As noted above, recognizing that the reliance requirement would preclude class certification of their UTPCPL claim, counsel for plaintiffs are now pursuing that claim only on an individual basis.  They have sought to circumvent the reliance requirement by adding breach of contract and unjust enrichment claims, which are based on the same underlying factual

allegations as the UTPCPL claim but are brought on behalf of a putative class.  However, as

demonstrated above, these newly-manufactured common law claims, like the UTPCPL claim,

are legally deficient because the alleged damages are purely speculative.  In addition, plaintiffs'

contrived breach of contract claim fails because the Amended Complaint does not allege any

actions by Fox that breached the terms of its purported contract with plaintiffs.  The Amended

Complaint alleges that the terms of that contract were as follows:

> Each Plaintiff accepted TEMPLE'S offer to provide certification
> leading to an Online MBA Degree and entered into an agreement
> to attend TEMPLE'S Fox Business School in exchange for
> payment of agreed upon tuition and fees.
>
> TEMPLE agreed to provide each Plaintiff with the necessary
> course work, instruction and training, in a specified time frame,
> whereby each Plaintiff would be eligible to earn certification for an
> Online MBA degree, upon their successful completion of required
> courses.

(Am. Compl. at ¶¶ 187-88) (capitalization in original).

However, the Amended Complaint does not allege any breach of the foregoing

contractual obligations by Fox.  Plaintiffs do not contend that Fox has failed to provide the

promised "course work, instruction and training" to them.  Nor have plaintiffs claimed that such

course work, instruction and training have been inadequate or substandard.

Under Pennsylvania law, "three elements are necessary to plead a cause of action

for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach

of the contract; and (3) resultant damages."  *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1262

(Pa. Super. 2017).  In *McCabe*, a former student alleged that Marywood University made

misrepresentations concerning the accreditation status of its nursing program.  She transferred

from Marywood to a different school after Marywood's accreditation had become conditional.

However, after her transfer, Marywood regained its full accreditation.  She filed suit against

Marywood for damages, including the various expenses incurred as a result of transferring schools, as well as a loss of income and employment opportunities due to her delayed graduation.  *Id.* at 1260.

      The Superior Court affirmed the dismissal of her breach of contract claim, finding that "we discern no breach of contract."  *Id.* at 1262.  It reasoned as follows:

> Marywood was fully accredited at all relevant times and afforded McCabe the opportunity to graduate from a fully accredited nursing program and to sit for her licensure exam upon graduation in the spring of 2015.  McCabe did not aver that Marywood*'s* conditional or temporarily-revoked accreditation status prevented her from graduating from a fully accredited nursing program or from sitting for her licensure exam.  Rather, her "lawsuit is premised on speculation as to what *would* have happened if Marywood's nursing program lost its nursing school accreditation."  ….  The law does not permit recovery by McCabe upon the facts averred.  Thus, we discern no abuse of the trial court's discretion or error of law in ruling that McCabe failed to state a claim for breach of contract.

*Id.* at 1262 (emphasis in original).

      Similarly, in this case, the very recent change in Fox's ranking by U.S. News & World Report has not prevented plaintiffs from receiving the "course work, instruction and training" they allege they were promised by Fox, nor has it prevented them from receiving their Online MBA degrees.  Plaintiffs' speculation concerning their future employment prospects, like the speculation by plaintiff in *Marywood*, does not suffice to state a claim for breach of contract, particularly inasmuch as plaintiffs here do not allege that any promises or agreements were made by Fox regarding their future employment.

      Nor does plaintiffs' repeated reference to an alleged breach of "the duty of good faith and fair dealing" (Am. Compl. at ¶¶ 189-194) enable them to survive this motion to dismiss.  Under Pennsylvania law, "a duty of good faith and fair dealing in a breach of contract claim must always be grounded in a specific provision of a contract."  *Nationwide Ins. Indep.*

*Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, 518 F.Appx. 58, 62 (3d Cir. 2013*) (citing

*Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000)).  Pennsylvania

courts "have recognized an independent cause of action for breach of a duty of good faith and

fair dealing only in very limited circumstances."  *Northview Motors*, 227 F.3d at 91.  Courts

"have utilized the good faith duty as an interpretive tool to determine the parties' justifiable

expectations in the context of a breach of contract action, but that duty is not divorced from the

specific clauses of the contract."  *Id.*[4]

   Accordingly, because plaintiffs do not allege that Fox failed to fulfill its alleged

promise "to provide each Plaintiff with the necessary course work, instruction and training"

(Am. Compl. at ¶ 188), plaintiffs cannot state a claim for breach of contract simply by repeatedly

reciting that there has supposedly been a breach of the duty of good faith and fair dealing.  *See*,

*e.g.*, *Marabella v. Borough of Conshohocken*, No. 16-cv-1153, 2016 U.S. Dist. LEXIS 157471,

at **9-10 (E.D. Pa. Nov. 10, 2016) (Rufe, J.) (the duty of good faith and fair dealing "is not

limitless" and "there must be some relationship to the provisions of the contract itself.  In other

words, the duty of good faith and fair dealing does not license courts to interpose contractual

terms to which the parties never assented.").

---

[4] *See also Sheinman Provisions, Inc. v. Nat'l Deli, LLC*, No. 08-cv-453, 2008 WL 2758029, at *3 (E.D. Pa. July 15, 2008) (Rufe, J.) (dismissing breach of contract claim that failed to allege the breach of a specific contractual duty; recognizing that in Pennsylvania, in order to plead a cause of action for a breach of good faith, "a plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract *other than the covenant of good faith and fair dealing*, and that resultant damages were incurred by plaintiff.") (emphasis in original); *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 815 & n.8 (E.D. Pa. 2017) ("[W]e do not separately consider any claim for breach of the duty of good faith and fair dealing, but instead assess the Complaint's alleged breaches of specific provisions of the contract in light of the parties' respective duties of good faith and fair dealing."); *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 561 (E.D. Pa. 2016) (recognizing that "this obligation of good faith is tied specifically to and is not separate from the [express] duties a contract imposes on the parties.") (internal quotation marks and citation omitted).

**D.     Additional Reasons Why Plaintiffs' Unjust Enrichment Claim is Legally Deficient**

Plaintiffs' unjust enrichment claim is legally deficient because, as demonstrated above, plaintiffs' damages theory rests on impermissible speculation.  What's more, the unjust enrichment claim fails because (a) plaintiffs have alleged that their relationship with Fox is governed by a contract; and (b) the Amended Complaint does not contain any allegations showing that Fox has been unjustly enriched.

Significantly, plaintiffs' unjust enrichment claim expressly incorporates by reference all of the preceding allegations, including those set forth in the breach of contract claim.  (Am. Compl. at ¶ 212).  This Court has stated that "[i]t is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment." *Vantage Learning (USA), LLC v. Edgenuity*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (Rufe, J.).  *Accord Sheinman Provisions,* 2008 WL 2758029, at *4 (same).

In *Vantage Learning*, this Court applied that principle in dismissing an unjust enrichment claim, and it stressed that "Plaintiff's claim for unjust enrichment incorporates by reference all facts pled in the breach of contract count."  246 F. Supp. 3d at 1100 n.12.  The Court relied on *Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 634 (Pa. Super. 2016), which held that where plaintiff's complaint alleged unjust enrichment as a second count and incorporated by reference the facts pled in the earlier breach of contract count, the unjust enrichment count "thus averred the existence and terms of the signed [a]greement," thereby warranting dismissal.  Here, too, plaintiffs' claim for unjust enrichment incorporates by reference the preceding breach of contract allegations.  (Am. Compl. at ¶ 212).  This compels dismissal of the unjust enrichment claim.

21

Moreover, the unjust enrichment claim should be dismissed because none of the allegations, even if deemed true, establish that Temple has been enriched unjustly.  In *WFIC, LLC v. LaBarre*, 148 A.3d 812, 819 (Pa. Super. 2016), the Superior Court explained that the elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  The Court emphasized as follows:

> [T]he most significant element of the doctrine is whether the enrichment of the defendant is unjust.  The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

*Id*. at 819.

Similarly, in *McCabe v. Marywood University*, McCabe, like the plaintiffs here, argued that the University was unjustly enriched by its retention of her tuition payments.  The trial court found that McCabe had not adequately alleged that Marywood had been unjustly enriched because she voluntarily chose to transfer schools and thus lost the academic credits she had accumulated.  The Superior Court affirmed the dismissal of the unjust enrichment claim, holding that:

> Even accepting as true McCabe's well-pleaded material facts and all reasonable inferences which may be drawn from those facts, we agree with the trial court's conclusion.  McCabe paid tuition and received academic credit for courses she enrolled in as a student in the nursing program…. McCabe fails to demonstrate how Marywood's retention of McCabe's tuition for the academic credits she earned from an accredited nursing program--credits she then lost by voluntarily transferring schools-qualifies as unjust enrichment.

166 A. 3d at 1264.

As discussed above, plaintiffs do not challenge the quality of the Fox Online

MBA Program.  Nor do they allege that Fox failed to provide the promised "course work,

instruction and training."  (Am. Compl. at ¶ 188).  And there is no allegation that the January

2018 change in Fox's ranking by U.S. News & World Report has resulted in any plaintiff losing

a potential job that he or she would have otherwise obtained.  Thus, it is not "unjust" for Fox to

retain the tuition payments that plaintiffs voluntarily agreed to pay.  *See Bradshaw v.

Pennsylvania State Univ.*, No. 10-cv-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011)

("[T]he plaintiff does not allege that the defendant failed to hold the classes for which she paid

her tuition or that she was prevented from attending such classes.  Under these circumstances,

the plaintiff cannot allege facts to support a claim of unjust enrichment. This claim will be

dismissed with prejudice.").

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Temple respectfully submits that the Amended

Complaint should be dismissed with prejudice.

Dated: June 4, 2018                                       Respectfully submitted,


 */s/ Joe H .Tucker*                                          */s/ Roberta D. Liebenberg*
Joe H. Tucker, PA ID # 56617                    Roberta D. Liebenberg, PA ID # 31738
Jessica Rickabaugh, PA ID # 200189         Gerard A. Dever, PA ID # 85291
**TUCKER LAW GROUP, LLC**                   Jessica D. Khan, PA ID # 208875
Ten Penn Center                                        **FINE, KAPLAN AND BLACK, RPC**
1801 Market Street, Suite 2500                 One South Broad Street, 23rd Floor
Philadelphia, PA  19103                           Philadelphia, PA  19107
Tel: 215-875-0609                                     Tel: 215-567-6565
Fax: 215-559-6209                                    Fax: 215-568-5872
jtucker@tlgattorneys.com                         rliebenberg@finekaplan.com


Attorneys for Defendant Temple University

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June 2018, I caused the foregoing Motion and

Memorandum of Law in Support of Defendant Temple University's Motion to Dismiss

Plaintiffs' Amended Complaint to be filed electronically with the Clerk of the Court by using the

CM/ECF system, which will send notice of electronic filing to counsel for Plaintiffs.


        */s/   Roberta D. Liebenberg*
        Roberta D. Liebenberg