IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
_____

KYLE SMITH, IBRAHIM FETAHI, SHAWN WYNN,
ARA SARDARBEGIANS, RYAN FINK, CHRISTOPHER
HAMILTON, JOHN THOMPSON and BRETT BONDS,
Individually and On Behalf of All Others Similarly
Situated,

                                                  Civil Case No.
                                                  2:18-cv-00590-CMR

                            Plaintiffs,

       -against-


TEMPLE UNIVERSITY,

                           Defendant.
_____


**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
<u>PLAINTIFFS' AMENDED COMPLAINT</u>**

Jason T. Brown,                                Steven Bennett Blau
JTB LAW GROUP, LLC                   BLAU LEONARD LAW GROUP, LLC
155 2nd Street, Suite 4                    23 Green Street, Suite 303
Jersey City, NJ 07302                     Huntington, NY 11743
T: 877-561-0000                              T: 631-458-1010
F: 855-582-5297                              F: 631-458-1011
jtb@jtblawgroup.com                   sblau@blauleonardlaw.com
                                         sleonard@blauleonardlaw.com


                             *Attorneys for Plaintiffs*

i

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL STATEMENT ......................................................................... 2

III.  THE ALLEGATIONS OF THE AMENDED COMPLAINT ............................. 3

IV.  THE AMENDED COMPLAINT ALLEGES MEASURABLE AND NON-SPECULATIVE DAMAGES ........................................................................... 4

   1.  The Damages Sought Are Concrete and Quantifiable ......................................... 4

   2.  The Amended Complaint Alleges Actual, Measurable and Non-speculative Damages for the Breach of Contract Claim. .................................................... 6

   3.  Other Courts Have Denied Motions to Dismiss in Analogous Cases ................................. 9

   4.  Plaintiff Has Plausibly Alleged Claims for Unjust Enrichment ........................ 13

V.  IN THE ALTERNATIVE, PLAINTIFF REQUEST LEAVE TO AMEND ........................ 16

VI.  CONCLUSION ................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Aiken Industries, Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808 (1978)................................ 5

*Agliori v. Metro. Life Ins. Co.*, 879 A.2d 315 (Pa. Super.2005)..................................... 9

*AMP Inc. v. Allied Signal Corp.*, 168 F.3d 649 (3d Cir.1999) ..................................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 4

*Bair v. Purcell*, 500 F. Supp. 2d 468 (M.D. Pa.2007) ................................. 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................... 4

*Bevelacqua v. Brooklyn Law Sch.*, No. 500175/2012, 2013 WL 1761504 (N.Y. Sup. Ct. Apr. 22, 2013)......................................................................... 12

*Bradshaw v. Pa. State Univ.*, 2011 U.S. Dist. LEXIS 36988 (E.D. Pa. Apr. 5, 2011) ................ 15

*Carroll v. Philadelphia Housing Auth.*, 168 Pa. Commw. 275, 650 A.2d 1097 (Pa. Commw. Ct. 1994)........................................................................... 5

*Condo. Ass'n Court of Old Swedes v. Stein-O'Brien*, 973 A.2d 475 (Pa. Commw. Ct. 2009) ....... 7

*Covington v. Cont'l Gen. Tire, Inc.,* 381 F.3d 216 (3d Cir.2004).................................... 9

*DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209 (3d Cir.2007) ....................... 3

*DePaul University*, 19 N.E.3d 1019 (Ill. App. 2014) ................................. 12

*Dzielak v. Whirlpool Corp.*, 2017 U.S. Dist. LEXIS 209106 (D.N.J. Dec. 20, 2017)................. 12

*Ferrer v. Trustees of the University of Pennsylvania,* 573 Pa. 310, 825 A.2d 591 (2002)............ 8

*Gabriel v. O'Hara*, 368 Pa. Super. 383, 534 A.2d 488 (1987) ....................................... 9

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)............................. 4

*Global Ground Support, LLC v. Glazer Enter., Inc.*, 581 F. Supp. 2d 669 (E.D. Pa.2008) ......... 13

*Gomez-Jimenez v. New York Law School*, 943 N.Y.S.2d 834 (N.Y. Sup. Ct. 2012)................... 12

*Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (N.Y. 2002) .............................. 10

*Hagl v. Jacob Stern & Sons, Inc.,* 396 F.Supp. 779 (E.D.Pa. 1975)................................................ 5

*Harnish v. Widener Univ. Sch. Of Law*, 833 F.3d 298, n.5 (3rd Cir. 2016) ........................... 7, 12

*Harnish v. Widener Univ. Sch. Of Law*, 931 F. Supp. 2d 641 (D.N.J. 2013) ........................ 10, 11

*Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606 (W.D. Pa.2013)........................................ 9

*Hedges v. United States,* 404 F.3d 744 (3d Cir.2005) ............................................................... 3

*Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989 (3d Cir.1987) ................................. 13

*Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607 (1981) ............................................................. 10

*James Corporation v. North Allegheny School District*, 938 A.2d 474 (Pa. Cmwlth.2007).......... 8

*Jernow v. Wendy's International., Inc.,* 2007 WL 4116241 (S.D.N.Y. 2007).............................. 10

*LBL Skysystems (USA), Inc. v. APG-America, Inc*., 319 F. Supp. 2d 515, (E.D. Pa. 2004).......... 7

*McCabe v. Marywood Univ.*, 166 A.3d 1257 (PA Super. 2017) ................................................. 15

*McDermott v. Party City Corp.,* 11 F. Supp. 2d 612, 624 (E.D. Pa.1998) ................................. 8

*Myers v. Robert Lewis Seigle, P.C.*, 751 A.2d 1182 (Pa. Super. Ct. 2000) .................................. 5

*Petrizzo v. DeVry Education Group, Inc.*, No. 16-cv-9754, 2018 U.S. Dist. LEXIS 22358 (N.D.

   Ill., Feb. 12, 2018) ............................................................................................................. 11

*Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979)................................................................... 6

*Rea v. Ford Motor Co*., 355 F.Supp. 842 (W.D.Pa. 1973) ........................................................... 5

*Schwarzwaelder v. Fox*, 895 A.2d 614 (Pa. Super.2006) ............................................................ 9

*Scobell Inc. v. Schade*, 455 Pa. Super. 414, 688 A.2d 715, 719 (1997) ..................................... 9

*Sevast v. Kakouras*, 591 Pa. 44, 915 A.2d 1147 (2007) .......................................................... 13

*Smajlaj v. Campbell Soup Co*., 782 F. Supp. 2d 84 (D.N.J. 2011)............................................. 12

*Starlings v. Ski Roundtop Corp*., 493 F.Supp. 507 (M.D.Pa. 1980) ............................................ 5

*Talalai v. Cooper Tire & Rubber Co.*, 360 N. J. Super. 547 (N. J. Super. Ct. Law Div.2001).... 10

*Taylor v. Kaufhold*, 368 Pa. 538, 84 A.2d 347 (1951)....................................................... 7

*Taylor v. Paul O. Abbe, Inc.*, 380 F.Supp. 601 (E.D.Pa. 1974) rev'd 516 F.2d 145 (3rd Cir. 1975) ............................................................................................................. 5

*Thorsen v. Iron & Glass Bank,* 328 Pa. Super. 135, 476 A.2d 928 (1984) .............................. 8, 9

*Trosky v. Civil Serv. Comm'n*, 539 Pa. 356, 652 A.2d 813 (1995) ................................. 6

*Vantage Learning (USA), LLC v. Edgenuity, Inc.* 246 F. Supp. 3d 1097 (E.D. Pa. 2017)........... 14

*WFIC, LLC v. LaBarre*, 148 A. 3d 812 (Pa. Super. 2016) ........................................... 15

*Wolfe v. Allstate Property & Cas. Ins. Co*., 790 F. 3d 487 (3d Circ. 2015) .................................. 8

*Yocca v. Pittsburgh Steelers Sports, Inc*., 578 Pa. 479, 854 A.2d 425, 438 (2004)...................... 9

**Other Authorities**

Section 344 of the Restatement (Second) of Contracts ........................................... 6, 7

Plaintiffs respectfully submit this brief in opposition to TEMPLE'S Motion, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the Amended Complaint.

Based upon authority set forth below, the motion should be denied in all respects.

## I.    <u>INTRODUCTION</u>

For at least four years, TEMPLE has committed a massive fraud upon its prospective students. Even though this fraud is not in dispute, TEMPLE believes the law has no mechanism to hold it accountable. However, just as TEMPLE's academic standards punish students for "falsifying data,"[1] so do Pennsylvania law and common law provide retribution against TEMPLE's deceit for falsification of data.

From 2014 to 2017, TEMPLE deliberately misreported admission statistics to U.S. News & World Report's Best Online MBA list, allowing its program (the Fox School of Business) to obtain the number one rank for four consecutive years. TEMPLE's top ranking was lucrative, allowing it to substantially increase enrollment. Since TEMPLE achieved its grossly inflated number one rank, its annual enrollment escalated from 48 to 255 students, a 431% increase.

Unfortunately for these students, TEMPLE's academic prestige was nothing more than an illusionist's prestige, a trick that disappeared under scrutiny. On January 24, 2018, U.S. News removed all references to TEMPLE's rankings after being notified that TEMPLE had significantly overstated the number of new entrants who submitted GMAT scores.

In 2013, TEMPLE reported that only 12 of 48 (25%) of its online MBA entrants submitted a GMAT score. For every year thereafter, TEMPLE reported that 100% of its entrants submitted a GMAT score. For instance, TEMPLE reported that all 255 students in its 2016 class

---

[1] Student Responsibilities, *available at* http://bulletin.temple.edu/undergraduate/about-temple-university/student-responsibilities/#academichonesty (last accessed June 29, 2018). TEMPLE's rules provide, in part: "Academic cheating is, generally, the thwarting or breaking of the general rules of academic work or the specific rules... It includes falsifying data…."

submitted GMAT scores, with an average score of 619. That average put TEMPLE among the

top five highest-scoring online MBA programs in U.S. News' Top 50. In reality, TEMPLE later

acknowledged that only 50 students, or 19.6%, submitted GMAT scores, indicating that the

reported average may have been significantly inflated.

TEMPLE deliberately falsified its GMAT information to manipulate its reputation and

marketability. U.S. News' ranking methodology penalizes online MBA programs if less than

75% of new entrants submit either a GMAT or GRE score because a low rate of test score

submissions "likely means the standardized test score is not representative of the entire class."

Standardized test scores, of course, are also a sign of the quality of a school's class. By vastly

overstating its GMAT score submissions to inflate its ranking, TEMPLE created the veneer of a

prestigious academic institution. Prospective students were thereby duped into paying premium

price for discount degrees.

## II.      PROCEDURAL STATEMENT

On April 12,2018, TEMPLE filed two (2) motions: (a) a motion pursuant to Federal

Rules of Civil Procedure 12(f) and 23(d)(1)(D) to strike all class action allegations in the

Complaint [Doc. 14] and (b) a motion pursuant to Federal Rules of Civil Procedure 12(b)(6) to

dismiss the Complaint. [Doc. 13].

On May 3, 2018 Plaintiffs filed an Amended Complaint pursuant to Rule 15(a)(1)(B).

[Doc. 19] In the amended pleading, the Class COUNT for relief under The Pennsylvania Unfair

Trade Practices and Consumer Protection Law, ("CPL") has been withdrawn. Plaintiffs,

however, assert individual claims under the CPL. The amended pleading adds two (2) new Class

COUNTS; i.e., for breach of contract and unjust enrichment.

TEMPLE now moves pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss the Amended Complaint on the erroneous grounds that Plaintiffs' claims are based upon speculative damages.

### III.    THE ALLEGATIONS OF THE AMENDED COMPLAINT

TEMPLE's Motion to Dismiss relies on the misinterpretation of Plaintiffs' "central allegation." TEMPLE thereby failed to address the crux of Plaintiffs' claims, including the following:

1) But for TEMPLE's deceptive reporting of admission data that catapulted it to US News' number rank, Plaintiffs and members of the Class would not have enrolled at TEMPLE and paid its premium tuition and fees (Am. Compl. ¶¶ 197-200);

2) By reason of TEMPLE's breach of agreement, Plaintiffs and members of the Class have sustained damages for loss of the benefit of their bargain, and for out of pocket damages (Am. Compl. ¶¶ 203-205); and

3) By reason of TEMPLE's breach, Plaintiff and members of the Class have sustained consequential damages stemming from fees and expenses related to TEMPLE's coursework (Am. Compl. ¶¶ 206-210).

These damages are ascertainable and can be quantified functionally, comparatively, and through the use of experts. The challenge of calculating damages, when actual damages exist, does not negate the ability to bring a claim.  Plaintiffs bear the ultimate burden of proof, but have sufficiently pled the damages at this stage to overcome a motion to dismiss.

### IV.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir.2005) The court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom and view them in the light most favorable to the non-moving party." *DeBenedictis v. Merrill Lynch & Co., Inc*., 492 F.3d 209, 215 (3d Cir.2007)

(internal citations omitted). In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id*. at 556.

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g*., Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV.    THE AMENDED COMPLAINT ALLEGES MEASURABLE AND NON-SPECULATIVE DAMAGES

TEMPLE erroneously contends that Plaintiffs' damages are speculative and fatal to their common law claims for breach of contract and unjust enrichment, as well as their individual claims under the CPL. TEMPLE'S arguments are inapposite, misplaced, misleading and clearly distinguishable. They must be rejected in all respects and TEMPLE must answer for the massive fraud it has committed.

### 1.    The Damages Sought Are Concrete and Quantifiable

Under Pennsylvania law, speculative damages are "[p]rospective or anticipated damages from the acts or facts constituting the present cause of action, but which depend upon future developments which are contingent, conjectural, or improbable." Black's Law Dictionary 392 (6th ed. 1990). "Damages are considered speculative if 'the uncertainty concerns the fact of damages, not the amount." *Carroll v. Philadelphia Housing Auth*., 168 Pa. Commw. 275, 650

A.2d 1097 (Pa. Commw. Ct. 1994). "Damages are considered remote or speculative only if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages." *Myers v. Robert Lewis Seigle, P.C.*, 751 A.2d 1182, 1184 (Pa. Super. Ct. 2000), appeal denied, 795 A.2d 978 (Pa. 2000). Where the amount of damages may be difficult to calculate with absolute precision, the indefiniteness does not preclude relief; rather, a claim for damages may be sustained if the amount may be fairly estimated from the evidence. *Aiken Industries, Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808 (1978). Indeed, the amount of damages need not be made with "mathematical certainty, but only reasonable certainty, and evidence of damages may consist of probabilities and inferences." *Molag, Inc. v. Climax Molybdenum Co*., 637 A.2d 322, 324 (Pa. Super. Ct. 1994) (quoting Delahanty v. First Pa. Bank, N.A., 464 A.2d 1243, 1257-58 (1983)

The determination of damages is a factual question to be decided by the fact-finder. *Hagl v. Jacob Stern & Sons, Inc.,* 396 F.Supp. 779 (E.D. Pa. 1975). The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable and inferential, as well as upon direct and positive proof. *Rea v. Ford Motor Co*., 355 F.Supp. 842, 879 (W.D. Pa. 1973) Thus, the law does not demand that the estimation of damages be completely free of all elements of speculation. *Taylor v. Paul O. Abbe, Inc.*, 380 F.Supp. 601 (E.D. Pa. 1974) rev'd 516 F.2d 145 (3rd Cir. 1975). While the trier of fact may not use sheer conjecture as a basis for arriving at a verdict, it may use a measure of speculation in aiming at a verdict or an award of damages, and an even greater degree of flexibility is granted in regard to testimony concerning prospective or future damages, which are at best, not always easy or certain of ascertainment and are to a large extent based on probabilities and uncertainties. *Starlings v. Ski Roundtop Corp*., 493 F.Supp. 507 (M.D. Pa. 1980). So then, mere uncertainty as

to the amount of damages will not bar recovery where it is clear that the damages were the certain result of the defendant's conduct. *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979).

**2.      The Amended Complaint Alleges Actual, Measurable and Non-Speculative Damages for the Breach of Contract Claim.**

Plaintiffs' right to recovery is established in common law. "[I]n the law of contracts remedies for breach are designed to protect either a party's expectation interest `by attempting to put him in as good a position as he would have been had the contract been performed, that is, had there been no breach'; his reliance interest `by attempting to put him back in the position in which he would have been had the contract not been made'; or his restitution interest `by requiring the other party to disgorge the benefit he has received by returning it to the party who conferred it.'" *Trosky v. Civil Serv. Comm'n*, 539 Pa. 356, 652 A.2d 813, 817 (1995) (citing Restatement (Second) of Contracts, Section 344, Comment a).

Section 344 of the Restatement (Second) of Contracts provides, in relevant part: "Judicial remedies under the rules stated in this Restatement serve to protect one or more of the following interests of a promisee: (a) his "expectation interest," which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed[.]"

The official comments to Section 344 address the concept of "expectation interest" as follows:

> a. Three interests. The law of contract remedies implements the policy in favor of allowing individuals to order their own affairs by making legally enforceable promises. Ordinarily, when a court concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had when he made the contract. It does this by attempting to put him in as good a position as he would have been had the contract been performed, that is, had there been no breach. The interest protected in this way is called the "expectation interest." It is sometimes said to give the injured party the "benefit of the bargain."

Restatement (Second) of Contracts § 344, comment a.

Consistent with this controlling legal authority, Plaintiffs seek damages that would place them in as good a position as they would have been, had the subject education contract not been breached by TEMPLE.

> Where one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.

*Taylor v. Kaufhold*, 368 Pa. 538, 84 A.2d 347, 351 (1951). *See also Harnish v. Widener Univ. Sch. Of Law*, 833 F.3d 298, 309 n.5 (3rd Cir. 2016) ("A benefit-of-the-bargain class action . . . entails proving that class members all reasonably expected more from the bargain than what they received"). TEMPLE's misrepresentations caused Plaintiffs to reasonably expect a top-ranking education and degree; instead, they enrolled at a lower-ranked (and now unranked) institution. Further, in addition to general damages for their loss of expectation interests, Plaintiffs are entitled to recover their consequential damages for collateral losses resulting from TEMPLE'S breach of contract. The specific consequential damages claimed are set forth above and in paragraphs 196-210 of the Amended Complaint.

It is well established that Pennsylvania law allows for consequential damages in breach of contract cases. *See LBL Skysystems (USA), Inc. v. APG-America, Inc*., 319 F. Supp. 2d 515, 523-24 (E.D. Pa. 2004); *Condo. Ass'n Court of Old Swedes v. Stein-O'Brien*, 973 A.2d 475, 483 (Pa. Commw. Ct. 2009). Pennsylvania law distinguishes "between general damages — those ordinary damages that flow directly from the breach; and special or consequential damages — those collateral losses, such as expenses incurred or gains prevented which result from the

breach." *McDermott v. Party City Corp.,* 11 F. Supp. 2d 612, 624 (E.D. Pa.1998) (citing *Fort Washington Resources v. Tannen*, 901 F.Supp. 932, 943 (E.D. Pa.1995)). The essential elements of a claim for consequential damages are that defendant had reason to know of the special circumstances causing the loss and that the injury was foreseeable. *McDermott*, 11 F. Supp. 2d at 624. Foreseeability is to be determined from the point in time when the contract was formed. *Id.*

"[A] party is entitled to recover whatever damages it suffered, provided the damages were such that would naturally and ordinarily result from the breach, or the damages were reasonably foreseeable and within the contemplation of the parties at the time of contracting and can be proved with reasonable certainty." *James Corporation v. North Allegheny School District*, 938 A.2d 474, 497 (Pa. Cmwlth.2007). Where the consequential damages are "foreseeable" and were contemplated by "the parties at the time they made the contract," they will be awarded in order to put the victim of the contract breach in the same position as if there had been performance, not breach. *Ferrer v. Trustees of the University of Pennsylvania,* 573 Pa. 310, 341, 825 A.2d 591, 610 (2002).

The following claimed consequential damages were foreseeable: application fees; transaction fees and interest charges in connection with student loans; costs incurred for course related books and online subscriptions; expenses incurred for airfare, transportation and meals in connection with TEMPLE'S mandatory one week residency program first semester study; online proctor testing fees; and trip expenses for immersion programs in foreign countries.

Furthermore, if a plaintiff is able to prove a breach of contract but can show no damages flowing from the breach, the plaintiff is nonetheless entitled to recover nominal damages. *Wolfe v. Allstate Property & Cas. Ins. Co*., 790 F. 3d 487 (3d Circ. 2015); *Thorsen v. Iron & Glass Bank,* 328 Pa. Super. 135, 476 A.2d 928, 931 (1984); see also *Scobell Inc. v. Schade*, 455 Pa.

Super. 414, 688 A.2d 715, 719 (1997). "A grant of summary judgment on the sole basis of

absence of provable damages, therefore, is generally improper." *Thorsen,* 476 A.2d at 931.

Federal courts applying Pennsylvania law have agreed with the impropriety of summary

judgment in such a situation. See *Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 645

(W.D. Pa.2013) ("Haywood's motion for summary judgment must, therefore, be denied because

the University, if it proves the other elements of a claim for breach of contract, may be entitled to

nominal damages.").

**3.    Other Courts Have Denied Motions to Dismiss in Analogous Cases**

To maintain a private right of action under the CPL, a plaintiff must demonstrate (1)

"ascertainable loss of money or property, real or personal . . . as a result of" the defendant's

prohibited conduct under the statute. 73 P.S. § 201-9.2(a); *see Yocca v. Pittsburgh Steelers*

*Sports, Inc*., 578 Pa. 479, 854 A.2d 425 (2004). Because the Pennsylvania Supreme Court has

not definitively addressed what constitutes ascertainable loss under the CPL, a district court must

predict how that court would rule if faced with the issue and in doing so, the decision of an

intermediate state court is particularly relevant. *Covington v. Cont'l Gen. Tire, Inc.,* 381 F.3d

216, 218 (3d Cir.2004). Lower state courts reason that "[a]scertainable loss must be established

from the factual circumstances surrounding each case," *Agliori v. Metro. Life Ins. Co*., 879 A.2d

315, 321 (Pa. Super.2005), but that the loss must be non-speculative. *Schwarzwaelder v. Fox*,

895 A.2d 614, 619 (Pa. Super.2006). The statute explicitly provides that any person who suffers

an ascertainable loss "may bring a private action to recover actual damages." 73 P.S. § 201-9.2.

Case law does, however, make clear that the CPL was meant to supplement and not to replace

common law remedies. *Gabriel v. O'Hara*, 368 Pa. Super. 383, 534 A.2d 488, 491 (1987).

The Third Circuit has also stated that a court "may consider similar statutes of other jurisdictions in construing" a Pennsylvania statute. *AMP Inc. v. Allied Signal Corp.*, 168 F.3d 649, 653 n.2 (3d Cir.1999). Under New York law, a premium paid can constitute actual injury compensable under its consumer fraud statute. *Jernow v. Wendy's International., Inc.,* 2007 WL 4116241, at *3 (S.D.N.Y. 2007) (citing *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314 (N.Y. 2002)).  Thus, a plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he/she actually received was worth may be able to satisfy the injury requirement. This legal rationale is followed by other courts.  The following judicial observation by the court in *Talalai v. Cooper Tire & Rubber Co.*, 360 N. J. Super. 547, 564 (N. J. Super. Ct. Law Div.2001) is instructive:

> Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known.... When the product fails to measure up [to reasonable expectations based on the representations made, the consumer has been injured; he has suffered a loss. [H]e has lost the benefits of the product which he was led to believe he had purchased. (citing *Hinchliffe v. Am. Motors Corp*., 184 Conn. 607 (1981)).

The District of New Jersey has denied a motion to dismiss when the alleged damages stemmed from defendant university's misleading employment statistics. In *Harnish*, plaintiffs alleged that they "would not have paid the amount in tuition" but for defendant's deceit, and sought damages for the inflated tuition caused by defendant's falsely reported post-graduate employment numbers. *Harnish v. Widener Univ. Sch. Of Law*, 931 F. Supp. 2d 641, 652-653 (D.N.J. 2013). The court found that plaintiffs' pleadings met the standard for ascertainable loss, which it broadly construed to cover situations in which "for their money, [plaintiffs] received something less than, and different from, what they reasonably expected in view of defendant's presentations." *Id*. at 653 (internal citation omitted). In addition, the court found that plaintiffs

10

alleged a causal connection between the misleading statement and plaintiffs' inducement to purchase education from defendant. *Id*. Accordingly, defendant's motion to dismiss was denied. Similarly, Plaintiffs in this matter, despite paying a premium tuition, received an education less than and different from what they expected based on TEMPLE's false statistics and ranking. Because Plaintiffs allege that they would not have enrolled and paid this premium but for TEMPLE's deceit, they have properly alleged a causal nexus.

To argue that Plaintiffs' claims of damages are speculative, TEMPLE relies heavily on the non-binding *DeVry* case, in which plaintiffs accused defendant of falsifying employment statistics. *Petrizzo v. DeVry Education Group, Inc.*, No. 16-cv-9754, 2018 U.S. Dist. LEXIS 22358 (N.D. Ill., Feb. 12, 2018). Since the *DeVry* plaintiffs alleged only that they were misled by defendant's employment statistics, the court found that "the difference between the true value and the inflated value can only be based on speculative post-graduate career prospects and earning potential." *Id.*, at *17. In contrast, Plaintiffs' chief allegation in this matter is that they would not have enrolled at TEMPLE and paid its ascertainable premium tuition but for its fraudulently obtained top ranking on U.S. News.

Whereas post-graduate earning potential may be speculative, one can easily ascertain that the value of top ranking MBA program is higher than that of a lower-tier one. Based on data from U.S. News, the average tuition per credit for online MBA programs ranked 1 through 10 in 2018 is $1,501.78.[2] In contrast, the average tuition per credit for programs ranked 11 through 19 is only $961.82, less than two-thirds the cost of the top programs.[3] Notably, the tuition drops precipitously from rank number 10 to 11, from $1,185 to $875, a 26% decrease.[4] Indeed, before

---

[2] Best Online MBA Programs 2018, *U.S. News & World Report*, *available at* https://www.usnews.com/education/online-education/mba/rankings (last accessed June 28, 2018).
[3] *Id*.
[4] Number 10 and number 11 are Pennsylvania State University and Auburn University respectively. *Id*.

its scandal emerged, TEMPLE set a tuition of $1,245 per credit, placing it squarely within the price range of the top 10 programs. **EXHIBIT A** – Excerpt of Temple's 2017-2018 Tuition Schedule. For their money, Plaintiffs reasonably expected a top ranking MBA program; instead, they received something less than and different from what they bargained for. *See Harnish*, 931 F. Supp. 2d at 653. Other cases that TEMPLE cites to defeat the Plaintiffs' damages theory also proceeded on the same fact pattern as *DeVry*, and are likewise distinguishable.[5]

This benefit-of-the-bargain "price-premium" damages theory has been upheld in the Third Circuit on a class-wide basis. In *Smajlaj v. Campbell Soup Co.*, the court denied in part defendant's motion to dismiss plaintiffs' claims that they were misled into paying a premium price for less-sodium tomato soup. 782 F. Supp. 2d 84 (D.N.J. 2011). The *Smajlaj* plaintiffs were willing to pay more for the soups labeled less-sodium with the reasonable expectation that such soups would contain less sodium than cheaper soups without the label. The court found that the difference in price between the less-sodium and the regular soups was an appropriate and ascertainable measure of plaintiffs' loss. *Id*. at 101. Analogously, and as demonstrated by tuition data, Plaintiffs were willing to pay more tuition for a top ranking MBA program. *See also Dzielak v. Whirlpool Corp.*, 2017 U.S. Dist. LEXIS 209106, at *23-24 (D.N.J. Dec. 20, 2017) (the court permitted plaintiffs to pursue claims based on the alleged price premium they paid for washing machines that were falsely represented to meet the Energy Star criteria).

Plaintiffs claim that but for TEMPLE's number one ranking and the associated prestige, they would not have applied for and enrolled at TEMPLE. As demonstrated above, Plaintiffs

---

[5] *DePaul University*, 19 N.E.3d 1019 (Ill. App. 2014) (plaintiffs alleged that they enrolled based on misleading employment and salary statistics); *Gomez-Jimenez v. New York Law School*, 943 N.Y.S.2d 834 (N.Y. Sup. Ct. 2012) (defendant disseminated misleading and deceptive statistics regarding recent graduates' employment rates and salaries); *Bevelacqua v. Brooklyn Law Sch.*, No. 500175/2012, 2013 WL 1761504 (N.Y. Sup. Ct. Apr. 22, 2013) (defendant reported misleading employment and salary information to U.S. News); *Harnish*, 833 F.3d 298 (defendant misrepresented that 90-97% of its graduates were employed post-graduation).

paid TEMPLE premium tuitions with the reasonable expectation they were enrolling in a top
program commensurate with that price. . Plainly, Plaintiffs did not receive what they bargained
for. They thought they were buying a diamond but received a zircon. After expending valuable
time, resources and significant tuition costs, Plaintiffs face the harsh reality that the TEMPLE
online MBA degree that they have already received or are about to earn, actually comes from an
unranked school involved in a notorious cheating scandal.

4.      **Plaintiff Has Plausibly Alleged Claims for Unjust Enrichment**

An action based on unjust enrichment is an equitable action which sounds in quasi-
contract, a contract implied in law. *Sevast v. Kakouras*, 591 Pa. 44, 915 A.2d 1147, 1153 n. 7
(2007). A plaintiff who claims unjust enrichment must "`show that the party against whom
recovery is sought either wrongfully secured or passively received a benefit that would be
unconscionable for the party to retain without compensating the provider.'" *Bair v. Purcell*, 500
F. Supp. 2d 468, 499 (M.D. Pa.2007) (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc*., 828
F.2d 989, 999 (3d Cir.1987)).

Under Pennsylvania law, the elements of a claim for unjust enrichment are: (1) the
plaintiff conferred a benefit upon the defendant; (2) an appreciation of such a benefit by the
defendant; and (3) the defendant accepted and retained such benefit under circumstances where it
would be inequitable for the defendant to retain the benefit without payment of value. *Global
Ground Support, LLC v. Glazer Enter., Inc.,* 581 F. Supp. 2d 669, 675 (E.D. Pa.2008).

Here, as alleged in ¶¶ 214-220 of the Amended Complaint, TEMPLE knew that its
number one ranking from U.S. News provided significant leverage to enable the school to
increase tuition rates and fees for its online MBA offering. TEMPLE knew that its failure to
achieve a top ranking from U.S. News was likely to make a difference in the purchasing

13

decisions of prospective applicants. A deciding factor for each Plaintiff in enrolling at TEMPLE

was the prestige associated with its number one online MBA ranking for consecutive years.

Relying upon TEMPLE's false reporting and top ranking, Plaintiffs and members of the

Class paid premium tuitions and other fees. TEMPLE'S actions and conduct as described herein

were immoral, unethical, and unscrupulous. As a result of the foregoing, TEMPLE was enriched,

at Plaintiffs' expense. Accordingly, it is against equity and good conscience to permit TEMPLE

to retain such enrichment. Applying the same legal analysis employed with respect to the breach

of contract claims, the damages associated with unjust enrichment are actual, measurable and

non-speculative.

Nevertheless, TEMPLE cites inapposite case law to support dismissal of the unjust

enrichment claims. First, TEMPLE argues that the existence of a contract forbids a party from

bringing a claim for unjust enrichment. However, TEMPLE's own cited authority clearly states

that a plaintiff may "plead unjust enrichment in the alternative in certain circumstances, 'even

where the existence of a contract would preclude recovery.'" *Vantage Learning (USA), LLC v.

Edgenuity, Inc.* 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017). Circumstances permitting pleading

unjust enrichment in the alternative are "that (i) the contract at issue covers only a part of the

relationship between the parties, or that (ii) the existence of a contract is uncertain or its validity

is disputed by the parties." *Id*. In this matter, the parties dispute the existence or validity of the

contract, with TEMPLE pointedly referring to it as a "purported contract." [Doc. 22, at 18.]

Furthermore, the "purported contract" in question does not cover the entire relationship between

the parties.

To bolster this clearly unavailing argument, TEMPLE then cites a string of case law

bearing no factual similarity to the instant matter. TEMPLE cites *WFIC*, in which the court

found that plaintiff attorney, who was discharged from the matter, did not have standing under the relevant statute to sue the attorney who ultimately settled the case; instead, the plaintiff may sue the client. *WFIC, LLC v. LaBarre*, 148 A. 3d 812, 819 (Pa. Super. 2016). Unlike the instant matter, plaintiff in *WFIC* failed to assert that defendant was enriched by any wrongful conduct. In addition, TEMPLE has not, and cannot, assert that Plaintiffs here have no standing in this matter.

*McCabe*, in which plaintiff lost academic credits after voluntarily transferring away from defendant's education program, is also inapplicable to this matter. *McCabe v. Marywood Univ.*, 166 A.3d 1257 (PA Super. 2017). The *McCabe* plaintiff's theory for damages was that defendant "was unjustly enriched by her payment of tuition for a nursing program that was not fully accredited." *Id*. at 1263. In reality, defendant was at all relevant times fully accredited, and plaintiff would have retained all credits had she not transferred out of the program. *Id*. In the instant matter, TEMPLE was at all relevant times a school undeserving of the number one rank on U.S News, having obtained this position through deceit. But for its fraud, Plaintiffs would not have voluntarily enrolled. TEMPLE was thereby unjustly enriched through the tuition premiums paid by Plaintiffs.

Lastly, TEMPLE cites *Bradshaw*, in which plaintiff sued after being dismissed for poor academic standing. *Bradshaw v. Pa. State Univ.*, 2011 U.S. Dist. LEXIS 36988 (E.D. Pa. Apr. 5, 2011). Unlike the instant matter, the *Bradshaw* plaintiff did not allege that she was fraudulently induced to pay tuition for an education different from what she expected; instead, she merely flunked out. *Id*. at *5. There was no inference that defendant made any misrepresentations or committed any other wrongful conduct. Because Defendant fails to cite a single relevant authority, the Court should allow Plaintiffs' unjust enrichment claims to proceed.

## V.      IN THE ALTERNATIVE, PLAINTIFF REQUEST LEAVE TO AMEND

As argued above, TEMPLE's motion to dismiss should be denied. In the alternative,

Plaintiffs request the Court's leave to amend the Complaint to include allegations including and

regarding:

1)   The demonstrable difference between the tuitions charged by top online MBA
     programs and their lower-ranked peers; and

2)  The existence, nature, and terms of the contract between TEMPLE and Plaintiffs.

## VI.      CONCLUSION

Plaintiffs and Class members have suffered due to TEMPLE's long-standing fraud. Not

only is the falsification of records a hypocritical violation of TEMPLE's own student codes, it

resulted in TEMPLE's profits at its students' expense.  For four years TEMPLE's fraud rested on

a house of cards; now that the house has collapsed, TEMPLE is telling this Court that it can't be

held accountable.  The Court must find otherwise. The students have suffered and the damages

are ascertainable.   TEMPLE'S Motion for an order dismissing the Amended Complaint should

be denied in all respects. In the alternative, Plaintiffs request leave to further amend the

Complaint in the aforementioned regards.

Dated: July 2, 2018

                                                    Respectfully submitted,


/s/ Jason T. Brown
JTB LAW GROUP, LLC                                  BLAU LEONARD LAW GROUP, LLC
155 2nd Street, Suite 4                             23 Green Street, Suite 303
Jersey City, NJ 07302                               Huntington, NY 11743
T: 877-561-0000                                     T: 631-458-1010
F: 855-582-5297                                     F: 631-458-1011
jtb@jtblawgroup.com                                 sblau@blauleonardlaw.com
                                                    sleonard@blauleonardlaw.com


                                *Attorneys for Plaintiffs*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on that July 2, 2018, I caused the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint to be filed electronically with the Clerk of the Court using the CM/ECF system, and serving counsel for Defendant via the same.

*/s/ Jason T. Brown*_____
Jason T. Brown
